## MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. A. NORDELL.

### Decided January 28, 1899.

1. **Master and Servant—Negligence—Promise to Repair—Pleading and Charge.**

Where the petition in an action for personal injuries received by an employe avers that the employer promised to repair a defect in the machinery of which the employe knew, and that plaintiff, thereafter, and believing that the repairs had been made, received the injuries because of such defect, this does not admit knowledge of the defect at the time of the injury and put plaintiff's right of recovery solely upon the promise and failure to repair, so as to render inapplicable a charge upon the master's duty to furnish safe machinery.

2. **Reliance on Promise to Repair—Contributory Negligence.**

Where the evidence shows that the employer promised to repair a latent defect in an engine, and that when the employe used it again he reasonably believed that the repairs had been made, the case does not call for a charge submitting to the jury the question whether an ordinarily prudent person would have relied upon the promise having been fulfilled. Railway v. Bingle, 9 Texas Civil Appeals, 322, distinguished.

3. **Same—Promise to Repair—Presumption.**

A servant may presume that the master has complied with his promise to remedy a defect in machinery which is not apparent upon a casual inspection, and he is not required to inspect the machinery before using it in order to ascertain whether or not the repairs have in fact been made, unless there is something in the condition of the machinery which would cause an ordinary person to make an examination thereof.

**4. Argument of Counsel and Charge.** 。

A statement by counsel in argument appearing to be merely the announcement of his conclusion from his analysis of the evidence, does not justify a requested charge from the court refuting the correctness of his reasoning.

**5. Evidence—Circumstance Charging Notice.**

Evidence that two or three days before an injury to plaintiff from a defect in an engine another employe complained to the master of the defect, is admissible for the purpose of showing that the master knew of the defect at the time of the injury to plaintiff.

**6. Same—Custom.**

The custom of a person claimed to have made a promise to repair an engine, not to make promises to repair, is inadmissible for the purpose of showing that he did not make the particular promise relied on.

APPEAL from Grayson. Tried below before Hon. DON A. BLISS.

*T. S. Miller* and *Head, Dillard & Muse,* for appellant.

*C. B. Randell,* for appellee.

FINLEY, CHIEF JUSTICE.—Appellee, as plaintiff, filed his original petition in the District Court of Grayson County on March 22, 1897, against appellant, as defendant, to recover damages for personal injuries received by plaintiff while in the employment of defendant as engineer, on one of its locomotive engines, on February 15, 1897, consisting, among other things, in the mashing of plaintiff's foot, necessitating the amputation of a large portion thereof; and afterwards, to wit, on April 25, 1898, plaintiff filed his first amended original petition, alleging that by reason of said injuries, and since the filing of the original petition, a second amputation was rendered necessary, and plaintiff's right leg was amputated between the ankle and the knee, and the leg, knee, and hip were rendered stiff, and plaintiff's nervous system and all his vital parts were greatly shocked and injured, and that all his injuries were permanent, causing great and continuous pain, and necessitating the payment of doctors' bills amounting to $500. The negligence alleged was the failure on the part of the defendant to use ordinary care in furnishing an engine reasonably safe for use, and that the engine furnished by defendant for plaintiff's use was improperly constructed, out of repair, and defective, and the throttle, valves, cylinder, and appliances for holding and using the steam, and propelling and controlling the movements of said engine were defective, which caused the engine to move and run over plaintiff's foot. That the condition of the engine was known to defendant, or would have been known by the use of ordinary care, but was unknown to plaintiff; that the throttle and valves were defective had been known to plaintiff shortly before the accident, but that he had reported same to defendant's proper representatives, whose duty it was to attend to such matters, and that they promised to repair same, and that repairs would be made at once, and as speedily as possible, and as soon as said engine was turned in for repairs; which promises plaintiff believed and relied upon, and

plaintiff believed that the engine had been repaired before his injury, and at the time he was injured believed that it was in proper condition. Plaintiff alleged that his time, worth $150 per month, had been and would always continue to be lost.

Defendant pleaded the general denial, and especially pleaded contributory negligence of plaintiff and his fellow servants, and that the risk was one of the assumed risks of plaintiff's employment, and that plaintiff had notice of the defect, and that plaintiff knew or ought to have known that the promise, if any, had not been complied with, and negligently placed himself in a position of danger, and that plaintiff did not rely upon said promises.

A trial before a jury resulted in a verdict and judgment in favor of appellee on April 28, 1898, for the sum of $9500. The railway company has appealed.

*Opinion.*—A. Nordell, appellee, was employed by the railway company as an engineer doing switching in the yards of the railway company at Denison, on the 15th day of February, 1897. On that day, about 11 or 12 o'clock, he received the injuries complained of in this suit. He had been working in the capacity indicated about one month. The engine which he handled in performing the duties assigned to him was engine 138. He discovered within a few days after he took charge of the engine that the throttle valve was out of repair and was leaking steam. He reported this fact promptly to the company and the latter promised to repair the defect. This promise was not observed, and he continued to report it daily and to receive renewed promises to repair. He relied upon their promises and remained in the employment and use of the engine. On the evening before the day of the accident he again reported the condition of the engine to the foreman and urged that the engine be repaired that night, and he received the promise that it should be done. Just at this time engineer Murphy, who relieved Nordell, came up and inquired what engine he should use, and was told by the foreman to take No. 140. The foreman told Nordell that 138 would go in for repairs that night, and that the throttle valve would be repaired. He saw 140 put upon the "going out track" and 138 going in on the dump track for the fire to be removed. At 7 o'clock next morning Nordell relieved Murphy, and took charge of engine 138, which Murphy was then using. He believed when he took charge of the engine that it had been repaired, but this was not true. The leaking of the throttle valve occurs inside the boiler, and is not discoverable to one handling the engine, except by the movements of the engine. When there is quick, heavy work being done, the defect would manifest itself in the action. But the engine may be used for hours in ordinary work without the engineer noticing that the throttle valve was leaking. The effect of this condition is to put the engine without the ordinary methods of control, and causes it to move when the machinery is adjusted so as to hold the engine in good condition stationary. In working the engine that morning there were no indications

that the defect still existed, and Nordell, believing that it had been repaired, was not apprehensive of any danger from it. They were not very busy that morning and had light work. Nordell found that the engine's pistons needed packing, and he sent the fireman for some rubber to replace that which was worn out. This was his duty. The brace had been lost off the brake shoe, and he was engaged in replacing it when the injury occurred. The piston which comes out of the brake cylinder was about to drop off on account of the brace being gone. It comes from the piston and bolts on to the brake shoe, and he had to push this brace back into the cylinder, which requires considerable force. He had a steel bar to pry with, and placed his foot against the track rail as a brace, and while in this position the engine was started by reason of the leak in the throttle valve and passed over his foot, crushing it. The engine could not have been put in motion, except by human hands, had it not been for the leak of the throttle valve. Had Nordell known that the throttle valve was still leaking, he would also have known that his position was perilous and would not have assumed it. We have given this detailed statement of the manner in which the accident happened, in order that the questions hereafter considered may be clearly understood.

The first, second, third, and fourth assignments of error are directed against the charge of the court. First. It is contended that the court erred in the third paragraph of the charge, in stating the duty of the master in furnishing the servant machinery with which to perform his duties. The charge is not challenged as being an incorrect statement of the law, but that it is not applicable, because the plaintiff admitted in his petition that he knew of the defect and sought only to recover upon the failure of the promise to repair. This is a misconception of the case, as we understand it. The plaintiff alleged that he had known of the defect prior to the accident, but the company had promised to repair it and he believed that this had been done, and that he did not know of the defective condition of the engine at the time of the accident. It would have been grossly unfair to the plaintiff for the court to have assumed that he knew of the defect at the time of the accident. He testified himself, that had he known the defect existed, he would also have known that the position he assumed when injured was eminently perilous. To have presented the case in that attitude to the jury would have effectually cut off his right of recovery. The charge was fully justified by the pleadings and evidence.

It is next urged that the court erred in the eighth paragraph of the charge in instructing the jury to the effect that if the servant knew of the defect, reported it to the master, master promised to repair the defect, the servant relying upon the promise remained in the service and use of the machinery, believing that the master had complied with the promise, and without knowledge or notice that the defect had not been repaired, was injured by reason of the defect the master would be liable. It is contended that it was a question for the jury to determine whether an ordinarily

prudent person would have relied upon the promise of the master having been fulfilled. The recent case of Railway v. Bingle, 91 Texas, 288, is cited in support of the proposition. Also the decision of the Court of Civil Appeals in the same case, 9 Texas Civil Appeals, 322. That case involved a different state of facts. There the employe knew of the defective condition of the engine before and at the time of the injury, and it being reported to the master he promised to repair the defect. It was properly held a question for the jury to determine whether a prudent man would have continued in the service and encountered the known danger. Here the servant did not know that the defect existed, the master did know it, and violated its duty in furnishing the engine to its servant in its defective condition.

Appellant was entitled to have the issue of plaintiff's contributory negligence submitted to the jury, and this was fully and fairly done by the court. The charge complained of, when considered in connection with the other portions of the charge, could have in no way misled the jury.

Third. It is insisted that said paragraph of the charge is further erroneous in that the jury were told that the servant may presume that the master has complied with the promise, and is not required to inspect the machinery before using it to ascertain whether the repairs have been made, unless there is something in the condition of the machinery which would cause an ordinarily prudent person to make an examination of the machinery. The duty of inspection does not ordinarily rest upon the servant,—he may assume that the master has performed his duty,—and the court did not err in this charge.

The entire section in which this proposition occurs did not give the jury an incorrect idea of the law. Railway v. Bingle, 91 Texas, 287.

Fourth. It is asserted that the charge requires that the plaintiff must have knowledge or notice of the failure to repair before the defendant could have the benefit of the law governing the case of a servant injured by defective machinery, which he knew to be defective and which the master had promised to repair.

The plaintiff's case as made by his pleadings and evidence was that he was injured through defective machinery furnished by the master, and that the master knew of the defective condition of the machinery, and that he did not know of its defective condition. The pleadings of the defendant, however, charged him with such knowledge. The court fairly charged the law applicable to a cause where the servant did not know of the defective and unsafe condition of the machinery, and also the law applicable to the case where the servant did know of the defects. The charge was eminently fair to the defendant, and it has no just cause of complaint against it.

The fifth and sixth assignments complain of the refusal of special charges bearing upon these phases of the case:

(a) The servant using machinery known to be defective must use such

care to avoid injury as a reasonably prudent person would use under such conditions.

This proposition was fully and fairly covered by the general charge and the special charge was properly refused.

(b) In order to find for the plaintiff upon the ground that the defendant promised to repair the machinery, it must be believed that he relied upon the promise in remaining in the employment.

As before stated, the plaintiff did not make that character of case by his pleadings or evidence, and the court did not err in refusing the charge. The general charge fully protected every phase of defense set up by the defendant, and no special charge was needed to protect its rights.

By the seventh assignment the refusal of this special charge is complained of: "In view of the remarks of plaintiff's counsel in the closing argument, to the effect that if the jury believed that plaintiff committed perjury when he testified that Daley and Goldsmith promised to repair the engine, then to find a verdict for the defendant, the defendant requests the court to instruct the jury that in this case they do not have to find that the plaintiff or any witness in the case did or did not commit perjury, but will determine the issues in the manner as stated in the court's charge, and that the jury will disregard the argument of counsel in such respect."

The statement of plaintiff's counsel in argument appears merely to be the announcement of his conclusion from his analysis of the evidence, and it did not justify a charge from the court refuting the correctness of his reasoning.

Ninth. Plaintiff was permitted to prove by one Rassmussen that two or three days before the injury he complained to the company of the defective condition of the throttle valve of this engine. This was objected to as irrelevant. It was not irrelevant. It was additional evidence that the company knew of the defect in the engine.

Tenth. The following bill of exceptions is made the basis of an assignment of error. "Be it remembered, that upon the trial of this cause plaintiff's counsel asked plaintiff's witness, J. R. Frew, on redirect examination the following question: 'If you had worked three men instead of two, then they would not have had to work on Sunday night, would they?' To which the defendant objected as irrelevant and immaterial, but the court overruled the objection, to which the defendant excepted, and the witness answered 'No.' Allowed, with the explanation that defendant had brought out the fact by said witness that all the men worked on Sunday nights just the same as they did on others." We can hardly conceive how this evidence can be of damaging effect to the defendant, were it held improper. There is nothing in the record to indicate how it could have injured defendant.

Eleventh. The following bills of exception are also made the foundation of assignments of error: "Be it remembered, that upon the trial of this cause, defendant, for the purpose of corroborating the testimony of its witness Goldsmith to the effect that he did not promise plaintiff to repair the engine as testified by plaintiff, proposed to prove by said witness

that it was not his custom to make such promises, and that the defendant had an established custom not to do so, to which plaintiff objected as irrelevant and immaterial, and the court sustained the objection, to which defendant excepted.

"Be it remembered, that upon the trial of this cause, after the defendant's witness Goldsmith had testified that it was usual to have the throttle valve repaired by the day crew, and that this kind of work was not ordinarily done by the night crew, defendant asked said witness this question: 'When a throttle valve is reported leaking, would you have had that repaired with your night crew at night?' to which the witness would have answered 'No, sir,' but plaintiff objected as immaterial and irrelevant and only an opinion of a witness and immaterial to any issue in this case, which objection the court sustained and defendant excepted."

As to the first item of evidence above indicated, the custom of the witness not to make promises to repair was not admissible to show that he did not make the promise in this particular instance. The plaintiff had testified that he did, while he positively denied it. As to the other item, the witness Goldsmith was afterward permitted to testify fully as to the work of repairing at night, and the master mechanic also testified as to that matter.

Twelfth. It is urged that the evidence did not justify the verdict in that it did not show that defendant promised to repair the engine, and that plaintiff did not have notice that the promise had not been complied with. The record does not sustain this contention. The evidence did show that the promise to repair was made, that plaintiff believed that the promise had been observed and the engine repaired, and did not know at the time of the accident that the defect in the throttle valve still existed.

Thirteenth. The last point urged is that the plaintiff was guilty of contributory negligence. The record is against this proposition. The jury were fully warranted in finding to the contrary, and in support of the verdict we so conclude.

No other questions are raised by the record, and finding no error in the proceedings, the judgment will be affirmed.

*Affirmed.*

Writ of error refused.