THE UNITED STATES, PLAINTIFFS IN ERROR V. WALTER JONES, ADMINISTRATOR DE BONIS NON OF BENJAMIN G. ORR.

THE SAME V. THE SAME.

404

The case was argued by Mr Butler, attorney-general, for the United States; and by Mr Coxe and Mr Jones, for the defendant.

408·

Mr Jones and Mr Coxe, for the defendant,

412

Mr Justice Story delivered the opinion of the Court.

This is a writ of error to the circuit court of the district of Columbia for the county of Washington.

The original suit was brought on a bond given by Orr, and certain persons as his sureties, to the United States, on the 9th of February 1818, for the penal sum of thirty-five thousand dollars, upon condition, well and truly to perform, &c. certain articles of agreement, dated the same day, &c. "made between John C. Calhoun, secretary of war, and the said Orr, concerning the supply of rations to the troops of the United States within the state of Georgia, including that part of the Creeks' lands within the territorial limits of said state, according to the true intent and purport" thereof. The defendant Orr died pending the suit, and it being revived against his administrator, the latter, after oyer of the bond, and condition, and articles of agreement, pleaded a general performance of the condition by Orr ; and the replication assigned for breach, that although the United States did advance and furnish to Orr, divers large sums of money at divers times, on account of, and to enable him to carry into effect the articles of agreement ; and although the accounts of Orr, in relation to the articles of agreement, had been finally settled by the accounting officers of the government, and upon the settlement, there was found due to the United States the sum, &c., &c. ; yet he had not paid the same, &c. Upon this replication, issue was joined ; and the cause being tried, a verdict was found for the administrator, upon which judgment was afterwards given by the court in his favour.

At the trial, several bills of exceptions were taken on behalf of the United States ; and the validity of these exceptions constitutes the matter now in controversy before this court.

The first article of the articles of agreement above referred to, is to this effect. " That the said. Orr, his heirs, &c. shall supply and issue all the rations, to consist of the articles hereinafter specified, that shall be required of him or them, for the use of the United States, at all and every place or places *where troops are, or may be stationed,* marched, or recruited, within the limits of the state of Georgia, including that part of the Creeks' land lying within the territorial limits of said state, *thirty days notice being given of the post or place where rations may be wanted,* or the number of troops to be furnished on their march, from the 1st day of June 1818, until the 31st day of May 1819, inclusive, at the following prices, &c." The tenth article provides, " that all such advances of money, as shall be made to the said Orr, &c, for, or on account of the supplies to be furnished, pursuant to this contract, and all such sums of money that the commanding officer of the troops or recruits, &c. may cause to be disbursed, in order to procure supplies, in consequence of any failure on the part of the said Orr, &c. in complying with the requisitions herein contained, shall be accounted for by him or them, by way of offset against the amount of such supplies ; and the surplus, if any, repaid to the United States immediately after the expiration of the term of this contract, together with interest, &c. ; and, that if any balance shall, on any settlement of the accounts of Orr, &c. be found due by him or them, &c. the same shall be immediately paid."

At the trial, the United States, in support of their suit, introduced certain official accounts and statements of the third auditor, duly certified from the treasury department, which were read in evidence, saving to the defendant all exceptions to the competency of these accounts to charge him, otherwise than as the items of charges in the same should be supported by proof. The United States also read in evidence a contract made by Orr in. January 1817, for army supplies for the state of South Carolina and Georgia for one year, from the 31st day of May 1817 : the terms of which contract are the same as those of the contract of 1818. Besides evidence to other points, not now material to be stated, the United States introduced the testimony of a Mr Abbott, and proved by him, that at the time when contracts were made for the supply of the United States troops, the contractors (as he believed) were then informed of

the fixed posts within the limits of the contract, and the number of troops there stationed, and that rations were to be regularly supplied by such contractor, according to the number of troops so stationed at such places; and that the contractor was informed he was to continue so to do, without any other notice so to do; and that special requisitions and notice of thirty days would be made and given, for all other supplies at other places or posts, and for any change in the quantity of supplies which might become necessary at the fixed posts, from a change in the number of troops stationed at such fixed posts; and that such was the understanding at the war department, in settling the accounts of contractors. But he did not know of any verbal explanation between the secretary of war and Orr on this subject, specifying any thing more or less, than what the contract specified; and he did not know that there had been any submission or agreement of contractors to such a construction of their contracts; but that such was the rule adopted by the accounting officers in settling the accounts of contractors.

The defendant, among other things, introduced evidence to show, that Orr always insisted on the necessity of requisitions and notices, according to the terms of the contract, for supplies at all posts, before he could be charged with a failure; and also to show the custom of making requisitions, and giving such notices for supplies at all posts where provisions were required, and without regard to their being old established posts, or new ones established after the contract.

After the whole evidence was closed, the attorney for the United States prayed the court to instruct the jury, "that it was competent for them to infer from the said evidence, that the said Orr, in supplying the fixed posts, as he had before done under his former contract, and knowing thereby the number of rations there required, dispensed with any special requisition and notice, in relation to such supplies to said posts; and in case of failure to supply such posts, according to usage and knowledge, is liable, under the bond and contract upon which this action is founded." The circuit court refused to give this instruction, and the question now is, whether it ought to have been given.

To the terms in which this instruction is couched, there is certainly a well founded objection. The language used is

equivocal, and admits of various interpretations ; and it is certainly the duty of the party asking an instruction, to express it with such certainty as may not mislead, either the court or the jury.   The court were asked to instruct the jury,  " that it was *competent* for them to infer from the said evidence, &c."   Now, if by " competent," as here used, it was intended that there was sufficient evidence from which the jury might infer a waiver or dispensation,- &c., the instruction was manifestly wrong, for it required the court to decide upon the weight of evidence, and to take from the jury the right to ascertain that which is peculiarly within their province, for themselves.   But if it was only intended to express, that there was evidence conducing to prove a waiver, the language was ill adapted to the purpose; for it does not ask, whether the evidence introduced on the part of the United States, if believed, conduced to such a purpose, but whether the evidence on both sides conduced to such a purpose, which would require the court to ascertain, in like manner, the weight of the evidence ;  for it could not be correctly affirmed, that the evidence conduced to such a purpose, where there was conflicting evidence, unless there was a decided preponderance on that side.

But without .dwelling more on the phraseology of this instruction, we are of opinion that the court were correct in refusing. it upon the substance of the doctrine asserted in it. The court were required to instruct the jury, that it was competent for them to infer that Orr had dispensed with any special requisition and notice, in relation to supplies at fixed posts, not from the evidence generally, but from two special circumstances in the case ; first, from having supplied the fixed posts, as he had done, under his former contract (that is the contract of the preceeding year, 1817), and secondly, from thus knowing the number of rations there required.   Now, the contract of 1817 entitled him to have requisitions and notices of thirty days, precisely in the same manner as the contract of 1818 did, and it was neither proved nor admitted in the case, that such requisitions and notices had not been given under the former contract.   If they had been given, then certainly there could be no legal inference, that they were not to be continued to be given under the contract of 1818.   And if they were not given, then the circumstance

that they had been dispensed with under a former contract, had no legal tendency to establish that they were dispensed with under a new and independent contract. Indeed, the very circumstance, that in some new and independent contract they were stipulated for, would furnish proof, that they were not intended to be dispensed with. Why otherwise should they be again inserted in the contract? Certainly not for the purpose of showing that they were not to be insisted on, but were to be dispensed with.

Besides, the fact of having supplied the fixed posts under a former contract, and knowing thereby the number of rations then required for them, could have no legal tendency to establish the right or duty of the contractor to supply the same posts with the same number of rations in future years. The number of troops might be varied; the importance of those posts might be diminished or increased; and from the nature of the military service, many other circumstances might occur to render a fixed quantity of supply at those posts, incompatible with the public interests or public necessities. The very language of the contract demonstrates, that no such fixed quantities could have been contemplated by the parties. The contractor is to supply and issue all rations, which shall be required of him, " at all, and every place or places where troops are or may be stationed, &c., thirty days' notice being given of the post or place where the rations may be wanted, or the number of troops to be furnished on their march." So that the contract not only does not look to any fixed posts in particular, but it carries on its face an implication, that the supply required might or would be varied in all posts and places.

Upon these grounds, we are of opinion that the circuit court were right in refusing the instruction prayed for. We give no opinion upon the point, whether a parol waiver of the notice stipulated for in the contract would, if proved, have entitled the United States to recover in this suit, it being a suit for a forfeiture for non-fulfilment of the terms of the contract. Even supposing a waiver by parol may discharge the party, so as to save a forfeiture of a bond, it does not follow that a waiver by parol is to be admitted to create a forfeiture of a bond. On neither point do we mean to express any opinion.

The next exception involves the same point relative to the

right of the defendant to have the credits allowed him on the treasury accounts, notwithstanding a rejection of some of the debits, which was involved in another case between the same parties, ia which my brother M'LEAN has already delivered the opinion of the court.

The next exception is to an instruction of the circuit court, given upon the prayer of the defendant. It is as follows: "That if the jury find and believe from the evidence aforesaid, that the three several advances from the war department to the said Orr, in the said first account above charged, to the amount of eighty thousand dollars, though appearing in the receipts for the same as made on account of this contract, were, nevertheless, advanced under an arrangement and understanding with the government and said Orr, to which the sureties in the bond now in suit, were in no manner party or privy; that the said sums of money were to be held by the said contractor as a common fund of supplies, as well for the forts and military posts in Florida, including the subsistence of the Indian prisoners there, as of the posts within the state of Georgia, and the Creek lands within the territorial limits of that state, and to be indiscriminately applied to all or any of both the Georgia and Florida forts and military posts, upon the terms and conditions of this contract, as if extended to the Florida posts; and that the said contractor was accordingly called on and required, in the execution of that contract, and out of the general fund so advanced, nominally, under this contract, to furnish subsistence as well for the Florida posts, including Indian prisoners there, as for the posts within the proper territorial limits of the contract indiscriminately; and that both branches of supply were blended in debits for alleged failures, &c., and credits for supplies in the same official account of advances and expenditures under this contract, as kept at the proper accounting departments of the treasury and war departments, without there being any specific part or portion of the said advances designated and set apart for the two branches of supply and subsistence in Georgia and Florida respectively: then the obligors in the bond now in suit, nor any of them, are not responsible in this action under the tenth article of said contract, for the accounting and paying by said Orr of any balance or surplus of the said advances remaining

in his hands, unexpended at the time of the expiration of the term of said contract, in the execution of the said contract, and in the supplies of subsistence therein stipulated for."

Stripped of the complicated circumstances in which this instruction is involved, it presents the simple question whether, under the tenth article of the contract of 1818, the parties to the bond are in the present action responsible for any balance in the hands of Orr, at the expiration of the same contract, of advances made to him ; not on account of that particular contract exclusively, but on account of that and other contracts, as a common fund for supplies, where accounts of the supplies, the expenditures and the funds had all been throughout blended indiscriminately by both parties, and no separate portion had been designated or set apart for the contract of 1818. We are of opinion that the question ought to be answered in the negative ; and that, therefore, the instruction given by the circuit court was correct. The tenth article of the contract of 1818 declares, that all advances made " for and on account of the supplies to be furnished pursuant to this contract," shall be duly accounted for. Now, advances made as a common fund for supplies under that and other contracts, without any discrimination or apportionment for either in particular, can, in no just sense, be said to be advances made for supplies " pursuant to the contract" of 1818. The whole fund might, if necessary, be rightfully applied for any purpose within the scope of either contract. The unexpended balance is not the balance of any appropriation or advances under any particular contract, but constitutes a common fund for all remaining purposes under any contract. If it were wanted for supplies for the Florida posts, there would be no pretence to say that it was a balance, for which the parties were responsible in the present suit. And if not wanted for such a purpose, still, to fix responsibility upon them according to the terms of their engagement, it must be shown that the balance was a balance, remaining unexpended, of advances under the contract of 1818. But how is that to be shown, when no distinct advances were made, no distinct expenditures required, and no distinct accounts kept under that contract ? To say that the parties to the present bond should be liable for the whole balance, would be to say, that they should be liable for ad-

vances made under any other contracts; and if not liable for the whole, the very case supposed in the instruction precludes the possibility of any legal separation of the items of the balance. Each and all of them are blended, per my et per tout, as a common fund. The case indeed, in the principles which must govern it, ranges itself under that large class of cases, where a party, bound for the fidelity of a clerk or other agent of A, as keeper of his money or accounts, is held not liable for acts done as the keeper of the money or accounts of A and B. And in the present suit there is no difference in point of law between the liability of the principal, and that of the sureties upon the bond. It is the same contract as to both; and binds both or neither. The United States are not, however, without remedy; for there can be no doubt that an action, in another form, would lie against Orr for any balance, however received, which remained unexpended in his hands after the termination of the service, for which the advances were made.

The next exception is to the refusal of the circuit court to instruct the jury " that the receipts of Benjamin G. Orr, offered in evidence, are prima facie evidence that he received the eighty thousand dollars under the contract, on which this suit is brought; and that it is incumbent on the defendants to satisfy the jury by evidence, that the said advances were not made under the said contract, as stated in the said receipts; *but that it was so stated by mistake or design on the part of the government and said Orr, and intended to be applicable to some other contract.*" The court gave the instruction as prayed, omitting only the last clause as to the mistake or design of the parties. And we are of opinion that the instruction, as given, was all that the United States had a legal right to require. If the advances were not made under the contract, as stated in the receipts, the parties to the bond were not responsible therefor, and it was wholly immaterial to them how it occurred; whether it was by mistake, or design, or otherwise. The receipts were prima facie evidence that the money was received under the contract; and it was incumbent on the defendants to establish the contrary by competent proofs.

Upon the whole, the opinion of the court is, that the judgment of the circuit court ought to be affirmed.