CHARLES STRAND v. THE CHICAGO & WEST MICHIGAN RAILWAY COMPANY.

[See 64 Mich. 216.]

*Negligence—Intoxication of person injured—Preponderance of evidence.*

1. A man cannot *voluntarily* place himself in a condition whereby he loses such control of his brain or muscles as a man of ordinary prudence and caution in the *full* possession of his faculties would exercise, and thereby contribute to an injury to himself, and then require of one ignorant of his condition recompense therefor.

2. Where, on the trial of a suit by a passenger against a railway company for injuries sustained in leaving the train by reason, as alleged, of the negligence of the company in not giving sufficient time for that purpose, the evidence discloses that the plaintiff had drank more or less intoxicating liquor before taking passage, the jury should have been instructed that, if such drinking contributed *at all* to such injury, the plaintiff could not recover.

3. In *such* a case, in the absence of knowledge on the part of the defendant's employés of such drinking, they are only bound to use toward the plaintiff the care and prudence that a sober man would require for his safety.

4. " Preponderance of evidence" is correctly defined to be " such
   evidence as, when weighed with that which is offered to oppose
   it, has more *convincing* power in the minds of the jury. It is
   not a technical term at all, but means simply *that* evidence
   which outweighs that which is offered to oppose it. It does not
   necessarily mean that a *greater number* of witnesses shall be pro-
   duced on the one side or the other, but that, upon the *whole* evi-
   dence, the jury believe the greater probability of the truth to be
   upon the side of the party having the affirmative of the issue."

Error to Kent. (Montgomery, J.) Argued October 4
and 5, 1887. Decided October 27, 1887.

Case. Defendant brings error. Reversed. The facts are
stated in the opinion.

*Smith, Nims, Hoyt & Erwin,* for appellant.

*Birney Hoyt,* for plaintiff.

MORSE, J. There is no material difference in the evidence
before us now and that presented when the case was. first
here. See 64 Mich. 216.

There was, therefore, sufficient testimony on the question
of negligence, both as regards the plaintiff and defendant,
to submit the case to the jury.

No errors are assigned in relation to the admission or
rejection of testimony. The whole argument is aimed at the
charge of the court.

There are 31 assignments of error. Several of them are
disposed of already, as they are directed against the submis-
sion of the case to the jury. Many of the requests refused
were given in substance, or modified in accordance with well-
settled principles, and we shall not here discuss them.

The evidence shows that the plaintiff, who resided at
Diamond Lake, in Newaygo county, on the morning of the
twelfth day of December, 1884, about 7 o'clock, took passage
upon the cars of the defendant at that place, and rode to
White Cloud, about five miles. He stayed at White Cloud

until about 11 A. M., when he took the train for home.   While at White Cloud, by his own testimony, he drank whisky three times.   There was evidence tending to show that he drank five times.

There was no evidence showing that he was so intoxicated, or so affected by liquor, as to be noticeable by any of the defendant's employés upon the train.   One of the passengers testified that he laughed and talked a good deal, looked red in the face, felt pretty well, and acted "funny and happy" as the witness did sometimes when he was "on a little toot." Another witness thought Strand was under the influence of liquor, and testified that he staggered, passing between the aisles when the car was in motion.

The defendant's counsel requested the court to instruct the jury as follows:

"1. It is admitted that the plaintiff had three drinks of wh'sky that morning, and, if the jury find that he was at all under the influence of liquor, and that this fact contributed to produce the injury, he cannot recover.

"2. If the jury find Strand did not use reasonable diligence in getting off, but, from any cause, as from being under the influence of liquor, delayed getting off, and this contributed to the injury of the plaintiff. he cannot recover.

"3. If the plaintiff was under the influence of l.quor to any extent, so that it hindered or delayed him in getting off, or influenced his judgment in getting off, and his being under the influence of liquor contributed to his injury, he cannot recover."

These requests were refused, but the court in this respect instructed the jury as follows:

"The evidence in the case shows that the plaintiff had been drinking,—had drank some whisky; there is some dispute about the amount.   This evidence is introduced in the case, and is entitled to be considered for its bearing upon the question of whether the plaintiff used reasonable diligence in endeavoring to get off, and reasonable caution in attempting to alight.   But unless you find that the liquor which he had taken affected him in one of these respects, the fact of his drinking becomes entirely unimportant in the

case. In other words, it is admissible as a circumstance, for what you think it worth, as bearing upon the main questions in the case to which I have directed your attention."

At the close of the charge the following colloquy took place:

"*By a Juror.* May I ask a question? If the company allow a drunken man to ride, are they not bound to take care of him until he gets off?

"*The Court.* There is no evidence in this case that would justify an instruction upon that inquiry.

"*By a Juror.* The defense undertook to show that he was under the influence of liquor?

"*The Court.* Yes.

"*By a Juror.* And if the company allowed him to get aboard knowing that he was under the influence of liquor, whether they would not be bound to take care of him as a person, and use extra caution in letting him off safely?

"*The Court.* What I mean to say upon that point is that there is no evidence in the case which would justify the court in submitting the question to the jury of whether or not the agents of the company had their attention directed to his being in a helpless condition, or in a condition requiring special attention.

"*Plaintiff's Counsel.* Will you allow me one suggestion on that matter?

"*The Court.* Yes.

"*Plaintiff's Counsel.* I would suggest that the rule of law as to allowing the plaintiff a reasonable time to get off is that, taking all the facts as they were, the circumstances, his age, size, and condition, the bundles that he had,—under these circumstances as they were,—he should be allowed a reasonable time to get off.

"*The Court.* I supposed the jury would assume that, as a matter of course, in determining what would be a reasonable time for a party to alight. If I did not say so, I certainly intended to,—that the jury are to take into account the fact that passengers often are incumbered with packages, and that they must of necessity have a reasonable opportunity to arise from their seats, take their luggage, whatever it may be, and depart from the train in a reasonable manner. That I supposed the jury would assume without special instructions on that point.

"*Defendant's Counsel.* In view of the question which the juror asked, I would like to make a suggestion to your honor,

and ask your honor to charge the jury in this respect; and I ask your honor to charge the jury that the company would not be responsible to a passenger, and would not be under obligations to extend any more than the usual privileges to him in getting off on account of his being intoxicated, or under the influence of liquor, unless they knew of his condition; and that in this case there is no evidence that the conductor or the brakeman had any knowledge of his being in a condition so that he could not get off as ordinary passengers do.

"*The Court.* I think, gentlemen, that inasmuch as this question has been suggested, it is fair to both parties that it be stated that that is by no means the theory of the plaintiff here. The plaintiff has not contended, nor does the plaintiff plant his case upon any theory, that this man was in a helpless condition. In this case there is no such question. There is no evidence, either, that any such condition of the plaintiff was called to the attention of the agents of the company. On the contrary, the contention on the part of the plaintiff is that the man was not in a state of intoxication at the time in any way so that it affected his locomotion, or his ability to alight from the train."

The first and third of these requests embodied the law as applied to the facts stated therein, and should have been given, or their equivalent, in such plain language as to admit of no misconception by the jury.

The second would have been correct, if the words "from any cause" had not been inserted.

The colloquy above given, and the charge of the court in relation to the drinking of the plaintiff, did not cover or embrace the propositions insisted upon by defendant's counsel, and to which they were entitled. The jury were told only that they might consider the fact or claim of the plaintiff's drinking as a circumstance bearing upon the question of reasonable diligence and caution. They should have been clearly instructed that, if the drinking of the plaintiff contributed *at all* to the injury, he could not recover. As it was conceded in the case that none of the defendant's employés knew that Strand had been drinking, they were bound only to use towards him the care and prudence that a sober man

would require for his safety. If the liquor that Strand had admittedly taken interfered at all with his diligence in starting in time to leave the train, or lessened his caution and prudence in getting off, and this effect, however slight, contributed to the injury, he was not entitled to demand damages.

A man cannot voluntarily place himself in a condition whereby he loses such control of his brain or muscles as a man of ordinary prudence and caution in the full possession of his faculties would exercise, and by such loss of control contribute to an injury to himself, and then require of one ignorant of his condition recompense therefor.

The court, as to the burden of proof, said :

" The burden of proof rests upon the plaintiff to make out the facts which I have stated to you are essential to establish his case by a fair preponderance of evidence. By this is meant such evidence as, when weighed with that which is offered to oppose it, has more convincing power in the minds of the jury. It is not a technical term at all, but means simply that evidence which outweighs that which is offered to oppose it. It does not necessarily mean that a *greater number* of witnesses shall be produced on the one side or the other, but that, upon the whole evidence, the jury believe the greater probability of the truth to be upon the side of the party having the affirmative of the issue."

It is claimed that this instruction allowed the jury to decide upon the probabilities of the existence of a certain fact or facts, without being satisfied of such existence. We do not think so. The jury were plainly told in other parts of the charge that they must find two facts:

1. That the defendant was negligent.
2. That the plaintiff was not negligent.

In determining these questions, upon which it was assumed there was conflicting evidence, the question of the burden of proof arose. And, in stating the definition of the word "preponderance," this instruction complained of was given.

It was in fact a definition of the term "preponderance of evidence," and, as a definition, was correct.

In the case of *Dunbar v. McGill*, 64 Mich. 682, where the action was in trover for the alleged conversion of a flock of sheep, the trial judge instructed the jury:

"If you find that these were Dunbar's sheep,—that there is a greater probability that they were Dunbar's sheep than that they were not,"—

And other things occurred as claimed by plaintiff, he could recover. We held this charge erroneous, because it permitted or authorized the jury to find that the sheep were Dunbar's without their being convinced of that fact.

The charge here is not open to this objection. If the evidence of the plaintiff is more probable than that of the defendant, it certainly outweighs it, and, if it outweighs it, the preponderance is with the plaintiff. That is all the instruction complained of amounted to. This does not, of course, relieve the jury from the duty of finding that the plaintiff's evidence is true, in order to render a verdict in his favor. But in this case, if the evidence of the plaintiff was to be believed, he was entitled to recover. On the other hand, if defendant's testimony was taken as true, he could not recover. One version or the other was the true one. The jury, in determining between them, had the right to weigh the probabilities of the different stories to ascertain which was correct.

This is what they did, and were properly instructed to do. There was nothing in this instruction that authorized the jury to guess either that the defendant was negligent, or the plaintiff without fault. They were told to find these facts, and were simply authorized in getting at the truth to weigh the probability of the different versions, and, if they found one more probable than the other, it preponderated over it.

The charge of the court cannot be complained of in any respect except as to the influence of liquor, if any such influence was found, upon the action of the plaintiff.

For the error in this respect the judgment of the court below must be reversed with costs of this Court, and a new trial granted.

SHERWOOD and CHAMPLIN, JJ., concurred.

CAMPBELL, C. J., did not sit.