### MEXICAN CENT. RY. CO., Limited, v. HENDERSON.

(Circuit Court of Appeals, Fifth Circuit. April 22, 1902.)

No. 1,118.

MASTER AND SERVANT—INJURY TO ENGINEER—INSPECTION OF ENGINE—DUTY OF ENGINEER—INSTRUCTIONS—WITHDRAWING CASE FROM JURY.

An engineer, prior to reaching repair shops, discovered a defect, which he indicated at the shop by entry in a work book kept for the purpose. Before starting out, according to the practice in the shops, he inspected the work book, to ascertain if the defects had been repaired, and discovered that the marks had been erased, which indicated that the needed repairs had been made. He assumed charge of his engine without an examination to determine if the repairs had been in fact made, though he stated it was an engineer's duty to see if his engine was in proper condition. The defect had not been repaired, and the engineer was injured thereby. *Held*, that it was error to refuse, as practically withdrawing the case from the jury, an instruction to find for defendant if the jury believed it was the engineer's duty to inspect his engine before starting out, and he did not make such inspection; that, had he made such inspection, as it was his duty to do, he could have discovered the defect, and avoided it; and that, by failure to make the inspection and discover the defect, he was injured.

Shelby, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Western District of Texas.

This action was brought by S. H. Anderson, the defendant in error (plaintiff below), to recover damages of the Mexican Central Railway Company, Limited, the plaintiff in error (defendant below), for personal injuries alleged to have been received by the plaintiff while in the service of the defendant, and to have been caused by the defendant's negligence in the manner as stated in the petition. The accident which it is alleged resulted in the plaintiff's injuries occurred in the republic of Mexico on August 20, 1899, at which time the plaintiff was an engineer in the employment of the defendant. Briefly stated, his petition claims that one side of the stirrup on the tender was broken, and that on arriving at Cardenas with his engine, in the daytime of August 19, 1899, he did, as was his duty to do, enter a memorandum on the work book, calling attention to the fact that the stirrup was out of repair; that he entered that memorandum on the work book for the purpose of notifying the defendant that the stirrup was out of repair, that it might be repaired before the engine was required again to be used; that at some time during the night of the same day, or early in the morning of the next day, while it was still night, he was called to go out on the same engine; that he went to the work book, and found that his memorandum had been erased, and he knew from that fact that the stirrup

had been repaired; that some time during that day, while out upon the road with his engine, he attempted to use the stirrup, and in making the attempt, by reason of one side being broken, it gave way, and he was injured.

The evidence on the trial which bears on the questions discussed in the opinion is the testimony given by the plaintiff, which the bill of exceptions shows substantially as follows: "Plaintiff, S. H. Henderson, after being duly sworn, testified in his own behalf as follows, to wit: Direct Examination by Buckler: "* * * I was employed by the Mexican Central Railway Company, Limited, in the capacity of locomotive engineer, about the 20th day of August, 1899, at which time my leg was injured. This took place at Canon water tank. We were going towards a place called Cardenas, in Mexico. I got off the tank on the left side of the engine. I then stepped around on the right side of the engine. The two front engines gave a lurch for the first engine to take water, and I went to jump on the tank. I noticed in the morning that the work I had reported on the work book had been marked off. I stepped on this stirrup, and it broke, and I went against the edge of the tank, and it took the flesh clean off the bone. I noticed that this stirrup had been broken before. I made a report of it on the work book. This work book is a book provided by the company for any work to be done on the engines. We write out our report on the work book, and then, when we come back to go to work, we generally always look and see what work is done. This had all been scratched out of the work book, and I supposed that this work had been done on this step, together with the other work I had reported. This work book was kept on the desk in the roundhouse at Cardenas. Cardenas is an inspection station. They have an inspector and master mechanic there, whose duty it is to see that these repairs are made before the engine goes out on the road again. This is the foreman's duty. He is appointed by the master mechanic. It is his duty to do this work. It is to be done by certain men, and it is his duty to see that the work is done. This is the duty of the master mechanic or those appointed by him. When I arrived there with my engine I discovered that one side of this step was broken, and I entered that fact upon the work book. I entered other memoranda at the time, to wit, that other work was to be done. The work book at that time was at the workshop, on the desk, in Cardenas, in the republic of Mexico. * * * Any work that was to be done on the engine was to be reported in this work book. When the work was done, they would erase the memorandum, so that any one examining the work book afterwards would know from the fact of the erasure of the memorandum that the work had been done. This was the custom established by defendant, and the way in which I always did my work. Whenever I got ready to go out, I consulted the work book, and the object of the erasure was to inform me that the step had been fixed. In this instance I saw the memorandum erased, and supposed from that that the work had been done, and, acting upon that supposition, I did not examine the step. Mr. Fulton was the master mechanic at that time. * * * I was employed by the Mexican Central Railway Company as an engineer. This was one of their Boggy engines. When I attempted to use this step of the Boggy engine I knew that the work had been erased off the book, and supposed it had been fixed. I did not know it had not been fixed. I made no examination myself. The engine was brought out to me in the night on the 19th of August at Cardenas. When I went to get on my engine at Canon water tank the train was moving back. I stepped on the stirrup, for the purpose of getting on the engine in the usual way, and when the train first jarred back I caught the handholds, and jumped it, as I usually would. I did this in the usual way of jumping on the train." Cross-examination by Davis: "* * * I could not tell you the exact time I left my engine at the roundhouse before I was injured, but it was on the 19th of August that I made out this report. I could not say as to the time of the day, but it was in the daytime. I went down the road on the night of the 19th, and came up on the morning of the 20th. I do not know when I left the roundhouse with my engine. The reason I did not look at the engine and the step, instead of the book, was that it had been fixed from an examination of the work book. I went to see where I was assigned. I went into the shop, and looked over the board

to see how many engines were going down. I first noted the book to see what work had been done. I looked on the book, and saw that this work had been erased, first by a pencil and then scratched. I don't mean that it was rubbed out by an eraser. The reason why I didn't look at it to see if the repair had been made was because I supposed the repair had been made. I didn't look to see whether it had been done. I could have seen whether or not the repair had been made had I made an examination of it. * * * Q. Isn't it the duty of the engineer to look over his engine before going out on his run? A. The duty of the engineer is to look at his engine, oil her up, and get ready for the trip. It is his duty to look over it, and see that it is in proper condition, and to see that everything is all right. Q. Had you looked over your engine at that time, would you have seen whether or not the engine had been repaired? A. I didn't look over it this morning when I went down the hill. Q. If you had looked for it, could you have seen whether or not the work had been repaired? A. Yes, sir; but I saw that the work that was on the book had been scratched out of the book. I couldn't tell who did scratch it out. I could not tell you who ran the scratch through that, and whether it was done by mistake or accident." Redirect examination by Buckler: "The object of erasing the memoranda was to show that the work was done to the engine. When I went to the memoranda I found that the same had been erased, the object of which was to inform me that the step had been fixed. This is the way the business was carried on there, and the way I always did my work. If anything occurred to any of the machinery on the road, I made a memorandum when I got to Cardenas, and it was my duty to enter it in the work book." Plaintiff, upon being recalled, testified as follows: Direct examination by Buckler: "* * * The repairs on the step that I reported should be done were such as were usually done at the shop in Cardenas. I entered there with my engine on the 19th. The engine was put in the shop. When I got ready to go out, the engine was brought out to me by the hostler, on the night of the 19th, and placed where I could go and get on it." Plaintiff again took the stand, and testified as follows: "When the engine was brought out upon the track by the hostler at Cardenas for me to take her out, it was fired up, watered, and so on, ready for the trip."

The bill of exceptions further shows: "All the evidence being in, and both parties having rested, the defendant then and there, before the jury had retired to consider of their verdict, requested the court to give the following charge: 'Defendant asks the court to charge the jury to find a verdict for the defendant herein,' which charge was refused by the court, and the defendant * * * duly excepted; * * * and the defendant then and there, and before the jury had retired to consider of their verdict, prepared and requested the court to give the following charge: 'The defendant asks the court to charge the jury as follows, to wit: Gentlemen of the jury, you are charged that if you believe from the evidence that it was the duty of the plaintiff to inspect his engine before starting out on the road; that he did not make such inspection; that, had he made such inspection, as it was his duty to do, he could and would have discovered the defect in the step, and have avoided the injury; and that by reason of plaintiff's failure to make such inspection and discover said defect he was injured by said defective step,—you will find for defendant,'— which charge was refused with the following explanation: 'The foregoing charge is refused. In refusing it the court desires to make this explanation: While being satisfied that, as a general proposition, and under proper facts, the charge embodies the law, yet plaintiff's counsel having produced several authorities, among them Railroad Co. v. Nordell (Tex. Civ. App.) 50 S. W. 601, and Railroad Co. v. Amato, 144 U. S. 465, 12 Sup. Ct. 740, 36 L. Ed. 596, which appear to hold that under somewhat similar circumstances the question was one for the jury, I concluded to submit it, although inclining to the view that a peremptory instruction should have been given for the defendant. See, also, Railroad Co. v. Babcock, 154 U. S. 199, 14 Sup. Ct. 978, 38 L. Ed. 958. [Signed] T. S. Maxey, Judge.'"

There was a verdict and judgment for the plaintiff, and the defendant brought this writ of error.

T. A. Falvey and Waters Davis, for plaintiff in error.
Millard Patterson and C. N. Buckler, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The plaintiff in error assigns seven grounds on which it asks a reversal of the judgment of the circuit court. We deem it necessary to notice only two,—the third and fourth, as numbered in the assignment. The first of these submits that the court erred in refusing the first requested charge, namely, "The defendant asks the court to charge the jury to find a verdict for the defendant herein." The other is, "The court erred in refusing the second requested charge." It is shown in the statement of the case. The distinguished and able counsel who have submitted a brief on behalf of the plaintiff in error have argued these assignments together, and treated them as practically equivalent to each other; that is to say, in their argument they consider their second request for instructions as, in substance, a request to withdraw the case from the consideration of the jury, and to direct, peremptorily, a verdict for the defendant. The explanation given by the trial judge of his action in refusing the second of the requested charges seems to indicate that he was of opinion that this charge would practically withdraw the case from the jury. We have very carefully examined the cases to which the trial judge refers, namely, Railroad Co. v. Nordell (Tex. Civ. App.) 50 S. W. 601, Railroad Co. v. Amato, 144 U. S. 465, 12 Sup. Ct. 740, 36 L. Ed. 596, Railroad Co. v. Babcock, 154 U. S. 199, 14 Sup. Ct. 978, 38 L. Ed. 958, and agree with him that these cases hold, under similar circumstances to those presented by the instant case, that the case was one for the jury. But we cannot concur in the suggestions of counsel for the plaintiff in error, or in the view which appears, by implication at least, to have been taken by the trial judge as to the character and effect of the second request. It does not seem to us to withdraw from the jury the question that was vital on the trial, but, in our opinion, expressly and correctly submits it to the jury. Let us examine it. Its language is :

"You are charged that if you believe from the evidence that it was the duty of the plaintiff to inspect his engine before starting out on the road; that he did not make such inspection; that, had he made such inspection, as it was his duty to do, he could and would have discovered the defect in the step, and have avoided the injury; and that by reason of plaintiff's failure to make such inspection and discover said defect he was injured by said defective step.—you will find for defendant."

The insistence of counsel for the plaintiff in error is that the testimony of the defendant in error shut the jury up to the one conclusion,—that, under the circumstances in this case, the defendant in error owed the duty to himself and to his employer to make a different inspection from the one which his proof shows him to have made, and that it concludes him, as an admission made as a witness on the stand, that he did not make such an inspection as was his duty, under the circumstances, to make before taking out the en-

gine. If the matter had been submitted to them under this requested charge, the jury might have so considered the plaintiff's testimony. But it can hardly be claimed that, on a consideration of the whole testimony given by the defendant in error, no reasonable mind could reach a different conclusion, or that the evidence is such that the trial judge must have thought it to be his duty to award a new trial in case the jury had reached a different conclusion, and returned a verdict for the plaintiff. The only defect in the engine involved in this inquiry was the broken step. The plaintiff's testimony shows that he, while operating this engine, prior to reaching Cardenas on August 19th, had discovered this defect; that Cardenas was the place where such defects were to be repaired; that in the due and regular discharge of his duty he gave notice thereof, in the manner required by the rules and practice of the company, to the agent of the company, whose duty it was to have the defect corrected and the step properly repaired; that, in the regular discharge of his duty, and according to the ordinary and well-known practice in the shops of the plaintiff in error at Cardenas, he did, before starting out on the trip on which he was injured, look at the work book, to see if the defects which his inspection had discovered, and which he had reported, had been repaired, and that he thereby discovered, from the marks designed to show the fact to him, that the work had been done and the needed repairs made. In answer to a categorical question the plaintiff did, indeed, say: "The duty of the engineer is to look at his engine, oil her up, and get ready for the trip. It is his duty to look over it, and see that it is in proper condition, and to see that everything is all right." But this does not at all indicate that the plaintiff, as engineer, was under any rule of duty not applicable in railroad operation to other locomotive engineers, or other than was binding on Nordell and on Munro, the engineers, respectively, in the Nordell and in the Babcock Cases, supra. The jury had the witness before them. His testimony was expressed to them, not alone in the arbitrary characters which constitute the words he used, but also by his manner in their use. Whatever may be the fact, it does not unquestionably appear on the surface of the language in which his testimony is reported to us that he thought, or that he intended to admit, or believed that he was admitting, that he had not done, on the morning he started out with his engine, all that his duty as an engineer and the rules and practice of the company required him to do to satisfy himself that the step in question was in condition for use. We think the requested charge submits to the jury what the authority of the cases cited by the learned trial judge requires should have been submitted to them; that its tenor and effect was not to withdraw the case from them, and to direct a verdict for the defendant; and that it correctly states the law to be that, if they find from the proof that the plaintiff did not make such inspection of his engine as it was his duty to do, they must find a verdict for the defendant.

It follows that for the error in refusing the second requested charge the judgment of the circuit court must be reversed. As we have already said, we do not deem it necessary to consider now the

other matters suggested in the assignment of errors, as the questions presented may not arise on another trial.

The judgment of the circuit court is reversed, and the cause is remanded to that court with direction to award the defendant a new trial.

SHELBY, Circuit Judge (dissenting). I am constrained to dissent from the opinion in this case. The trial court refused to give the following charge:

"You are charged that if you believe from the evidence that it was the duty of the plaintiff to inspect his engine before starting out on the road; that he did not make such inspection; that, had he made such inspection, as it was his duty to do, he could and would have discovered the defect in the step, and have avoided the injury; and that by reason of plaintiff's failure to make such inspection and discover said defect he was injured by said defective step,—you will find for the defendant."

In view of the evidence given by the plaintiff as a witness, the court below construed the charge to be a peremptory instruction to find for the defendant, and therefore refused to give it. In the opinion of this court the charge does not take the case from the jury. This difference of opinion as to its proper construction tends to show that it was not a proper instruction to give to the jury. Construed in the light of the evidence to which it relates, it is obscure and ambiguous. A trial court should not be reversed for the refusal to give a charge that is susceptible of two constructions, one of which is a correct and the other an erroneous statement of the law. I think the charge is contradictory and repugnant. In the first paragraph it leaves the question of the plaintiff's duty to the jury,—"if you believe from the evidence that it was the duty of the plaintiff to inspect his engine," etc.; in the second paragraph it is stated that it was the plaintiff's duty to inspect the engine,—"that had he made such inspection as it was his duty to do," etc. The trial court should not be reversed for a refusal to give a charge which is either contradictory or ambiguous. The refusal of such instructions is always proper. In U. S. v. Jones, 8 Pet. 399, 414, 8 L. Ed. 988, in declining to reverse the trial court for refusing to give requested instructions, Mr. Justice Story said:

"The language used is equivocal, and admits of various interpretations; and it is certainly the duty of a party asking an instruction to express it with such certainty as may not mislead either the court or the jury."

The cases from the state courts of last resort are to the same effect. Proff. Jury, 338, 345, 346; 11 Enc. Pl. & Prac. 140, 141; Strohn v. Railroad Co., 99 Am. Dec. 127.

The charge in question here is construed by counsel and the trial court to be a peremptory instruction to find for the defendant. It may be conceded that this court is right in placing a different construction on it. But a charge that is so contradictory and ambiguous that it may fairly be susceptible of such different and conflicting constructions ought not to be given. When an instruction is so written that learned counsel and courts may fairly differ as to its meaning, it would probably be misleading, and confusing to the

114 F.—57

jury. It is incumbent on a party seeking an instruction to put it in such clear, precise, and intelligible form as to leave no reasonable ground for misapprehension by the jury as to its correct meaning. Unless the charge is so written, I do not think it is error for the trial court to refuse to give it.

I therefore respectfully dissent from the opinion of the court.