[No. 1667.]

## JOHN DEVENCENZI, RESPONDENT, *v.* PIETRO CASSI-NELLI, APPELLANT.

1. APPEAL—CONFLICTING EVIDENCE—VERDICT. Where, in an action on an account stated, the testimony on all material matters was at such variance that the jury was necessarily compelled to determine as between plaintiff and defendant, the verdict would not be disturbed on appeal as contrary to the preponderance of the evidence.

2. SAME—RECEIPTS—CONTRADICTION—PAROL EVIDENCE. A receipt, though evidence of payment of the highest character, is merely *prima facie* evidence of the facts recited therein, and may · be explained or contradicted by parol.

3. SAME—PREPONDERANCE OF EVIDENCE. Where, in an action on an account stated, the testimony of plaintiff and defendant was conflicting on every material point in the case, so that, if the jury believed either, it must have rejected the testimony of the other as untrue, not only in reference to the giving a receipt for an alleged payment, but as to all the remaining material portion of his testimony, it could not be said that, as the proof with reference to the purpose of the receipt was an equipoise, the receipt itself was not impeached, and constituted a preponderance of the evidence.

4. SAME—WITNESSES—CROSS-EXAMINATION. Where, in an action on an account stated, a portion of an account contained in defendant's book had been offered in evidence on defendant's direct examination, plaintiff was entitled to cross-examine defendant with reference to the accounts contained in the book.

APPEAL from District Court, Lyon County; *M. A. Murphy*, Judge.

Action by John Devencenzi against Pietro Cassinelli. From a judgment for plaintiff, defendant appeals.   **Affirmed.**

The facts sufficiently appear in the opinion.

*John Lothrop* and *Alfred Chartz*, for Appellant:

I.   Appellant calls the attention of the court to the following testimony: "Receipt: Dayton, June 6, 1901. Received of Pietro Cassinelli the sum of $500 on account of labor. Giovanni Devencenzi.

"Receipt: Dayton, April 15, 1901. Giovanni Devencenzi signs to receipt $1,000 from Pietro Cassinelli for labor. Signed from my name: Giovanni Devencenzi.

"Receipt: Dayton, Nevada, April 23, 1901. Received of Pietro Cassinelli the sum of $100 on account of one note of Giovanni Devencenzi. Signed: A. Scanavino."

The receipt of April 15, 1901, bears date of the stated

account, and was undoubtedly included in said account, and has no bearing in the argument except as tending to show that said plaintiff and defendant agreed on that day that by May 1, 1901, there would be due plaintiff $584, which sum would and did include the value of two horses, fixed at the sum of $130.   Defendant denied that any such account, or any account, was ever stated between them.   However, there is evidence to show that such account was stated between them, and this court cannot disturb the conclusions of the jury on that point.

We now have to deal principally with the receipt for $500 and the receipt for $100, and on these points we refer the court to the testimony.   The complaint fails to allege, and the testimony fails to show or tend to show, that the receipt for $500 was obtained by fraud, or that it was not honestly given for money received by the plaintiff.   The defendant wrote the receipt himself, on the book belonging to the defendant, and kept by plaintiff, as defendant is unable to read or write.   In explanation of the receipt for said sum of $500 plaintiff testified that he never received any money for it, and that he gave the receipt as a matter of accommodation to defendant, and at page 38 of the statement, line 9, he is asked by his own counsel:   "Q. Does not Cassinelli still owe you the money represented by the $500?   A. Yes, sir, by right he does; if he don't want to pay me he don't have to."   At page 18, line 5, he testifies:   "Q. That $500 that you testified about, you gave him credit for that?   A. I gave him credit for that; I never got a cent, though; he never paid a cent, though.   Q. You made him a present of that $500?   A. Yes, I made him a present; I never received a cent, though.   Q. That is the note that was included in the settlement on the day of the settlement?   A. Yes, sir."

Plaintiff further testified that the Scanavino note for $100 was included in the settlement.   The settlement occurred on April 15, 1901, and the receipt for $500 June 6, 1901, showing beyond peradventure of doubt that plaintiff did not tell the truth when he testified that the receipt for $500 was included in the settlement.   It was something that could not have been in contemplation of the parties at the date of the

settlement, April 15, 1901, because the settlement is to May 1, 1901, figured on April 15, 1901, but in opposition to this possibility we have the testimony of plaintiff, as follows: "Q. Did you receive any more than $15 after that? A. He paid $100 to Scanavino since, and then he paid Quilici $150." At page 15 of the statement plaintiff very clearly shows that his claim of $584, as settled between the parties, on the 15th day of April, 1901, was all for labor and wages. At other parts of his testimony, under leading questions, he shows that the $100, paid by defendant to Scanavino on a note due Scanavino by plaintiff, was agreed to be paid by defendant on top of the $584 agreed to be due plaintiff on April 15, 1901. However, the plain facts show that on April 15, 1901, the parties agreed that defendant owed plaintiff $584, and no mention was made of the $100 plaintiff owed Scanavino, and on April 23, 1901, defendant paid said note of said plaintiff to Scanavino, at plaintiff's request, and plaintiff now claims said sum was included in the settlement that was made eight days prior to said payment, although not mentioned in the settlement. It is therefore submitted that the settlement of April 15, 1901, on the sum of $584 as being due plaintiff by defendant, was all defendant owed plaintiff on that date, and all he would owe plaintiff up to May 1, 1901, and that defendant is entitled to said credit for $100 for the payment of said Scanavino note, and that there is no testimony in the record of consideration to offset the admitted fact that said note was paid by defendant for and on behalf of plaintiff and at his request after the parties agreed that defendant owed plaintiff only $584. The Scanavino note of $100 was paid by defendant for plaintiff eight days after the settlement, and there is no evidence to show that it was included in the settlement, except the contrary evidence of the plaintiff, and the rule is well settled that the testimony of a party to an action which he gives against himself is the most credible, and plaintiff having testified both ways, the testimony he gave against his interests must be accepted as the truth.

II. It must be borne in mind that there is no claim that said receipt was obtained by fraud or undue influence;

plaintiff simply testifies that he made a present of it and never received a cent for it and defendant doesn't need to pay it if he doesn't want to. If he made a present of it, what right did the jury have to give judgment for it? The rule that if there is any material evidence to support the judgment or other decision certainly does not stretch far enough to cover such a case within its beneficent scope. "Where the evidence supporting and that impeaching a receipt are balanced, the receipt must have its *prima facie* effect." (23 Ency. of Law, p. 986, 2d. ed., and authorities and entire title referred to on "Receipts.")

III.  A receipt must stand where the evidence is of equal weight. (*Ennis* v. *Pullman Palace Car Co.*, 165 Ill. 161; *Levi* v. *Karrick*, 13 Iowa, 344; *Borden* v. *Hope*, 21 La. Ann. 581.)  The testimony to invalidate the receipt must be convincing. (*U. S.* v. *Jones*, 8 Pet. (U. S.) 399; *Harden* v. *Gorden*, 2 Mason (U. S.) 561; *Guldager* v. *Rockwell*, 14 Colo. 459; *Neal* v. *Handley*, 116 Ill. 418; *In re Rhodes*, 189 Pa. St. 462.)  If the jury believed from the evidence that the receipt was given to help defraud creditors, as the testimony of plaintiff tends to show, plaintiff was not entitled to consideration for his wrongful act.  However, the great preponderance of the testimony tends to show that the $500 was actually paid. Plaintiff knew from June 6, 1901, to the date of his suit and to the date of the trial, about three years, that he had given that receipt, and he never gave the slightest intimation that no money had been paid for it, and he never demanded the return of his receipt.  ·

IV.  It needs no authorities to satisfy the court that when a man sues for services performed from April 24, 1896, to the 7th day of January, 1902, he cannot recover for services performed between 1893 and 1896, and he cannot offer testimony showing or tending to show that such services should be considered in the suit.  The *probata* must follow the *allegata*.  Proof is only admissible to establish the case made by the allegations of the pleading. (*Wheeler* v. *Schad*, 7 Nev. 204; *Hirschfeld* v. *Williamson*, 18 Nev. 66; *Carson River L. Co.* v. *Bassett*, 2 Nev. 249.)  ·

V.  The court admits that defendant testified there had

been no settlement between himself and plaintiff, and it is here insisted that defendant insisted there never had been a settlement between them, showing that he was consistent in his testimony, and proving to this court that the testimony actually obtained on cross-examination of defendant was not directed to show whether he had testified differently on another occasion, but was solely directed to show that from 1893 to 1896 he had paid plaintiff only $281.27 and was entitled to $40 a month from July, 1893, to April, 1896, minus the time lost. There is not a single word directed to the fact that defendant ever testified in any former case that he ever had a settlement with plaintiff. All that testimony went before the jury under the false pretense that it was sought to impeach the witness, in order to show to the jury that from July, 1893, to April, 1896, plaintiff had worked for defendant for $40 per month and board, and had received only $281.27. Defendant was clearly prejudiced by such irrelevant testimony.

VI. It is respectfully submitted that the jury erred in ignoring the great weight of the receipts for $100 and for $500, and that would be error on their part even though the evidence was balanced and in equipoise. It is further submitted that defendant suffered grievous prejudice by the introduction of testimony that he was really indebted over $1,800, instead of $743.46, and that there would be no harm done defendant if made to pay the amount claimed, without considering the $100 and $500 payments; that the jury could ignore those two payments, and still feel justified in giving judgment for the full amount claimed.

*Geo. D. Pyne* and *Mack & Farrington*, for Respondent:

I. The evidence introduced at the trial was conflicting, but from the statements of the defendant himself the jury were not only justified in finding the verdict rendered, but in justice, according to the evidence, could have found no other verdict.

II. Appellant complains that the jury did not consider the receipt of $100 paid by Cassinelli to Scanavino and which receipt is known as the Scanavino receipt, April 25, 1901.

The receipt bears date of the settlement of 1901, but, if the court will examine the account stated itself, it will show that the account stated was to be a full settlement of all moneys due and all moneys paid to May 1, 1901, and this fact, taken in connection with the testimony of plaintiff, conclusively proves that the jury was right in its verdict that this Scanavino receipt was included in the settlement of April 15, 1901.

III. The $500 receipt was given by Devencenzi to Cassinelli as an accommodation with the understanding that the receipt was to be in accordance with an understanding between the parties and was not to be considered against Devencenzi, and was given without consideration by Devencenzi to Cassinelli. Cassinelli was in debt to various parties for money and thought it would be a benefit to him to have Devencenzi's receipt, showing that he paid his hired man this money, and for this reason, and to accommodate his employer, he gave Cassinelli the receipt. The testimony of Devencenzi on page 37, line 3: "Q. This is a receipt for $500? A. Yes, but I never got a five cent for it. I will swear to it. I made that for his accommodation; you bet I did. Q. Since the settlement? A. Yes, since the settlement. I will swear before anything that I never got a five cent for it. * * * Q. Does Cassinelli still owe you the money represented by the $500? A. Yes, sir, by right he does; if he don't want to pay me, he don't have to." Counsel for appellant makes capital out of the last statement of plaintiff that "if he don't want to pay me, he don't have to." The court will consider that this plaintiff is an illiterate man and that what he meant was that if the law did not give him his honest due when he appealed to the courts for his right and decree that Cassinelli owed him this money and give him judgment for the amount, then Cassinelli did not have to pay it.

IV. The jury found that an account stated had been rendered on April 15, 1901, settling all transactions between the parties up to May 1, 1901. The jury found, as shown by its verdict, that the Scanavino receipt was included in that settlement; the jury found that the $500 receipt was made without any consideration; that Devencenzi gave him the receipt for his (Cassinelli's) accommodation and at his (Cas-

sinelli's) request, and that he was never paid a cent for making that receipt. The jury found, as shown by their verdict, that there was due and owing Devencenzi by Cassinelli on January 7, 1902, the sum of $730.46. Their finding cannot be set aside by the appellate court. "Neither the findings of fact by a judge nor the verdict of a jury will be disturbed on the ground of insufficiency of testimony, in case of a conflict, unless the preponderance of evidence against it be great and decided." (*Reed* v. *Reed*, 4 Nev. 395; *Ophir S. M. Co.* v. *Carpenter*, 4 Nev. 534; *Roney* v. *Buckland*, 5 Nev. 219; *Clarke* v. *Nev. L. & M. Co.*, 6 Nev. 203; *Simpson* v. *Williams*, 18 Nev. 432; *Buckley* v. *Buckley*, 12 Nev. 423; *Lewis* v. *Wilcox*, 6 Nev. 215; *Carlyon* v. *Lannan*, 4 Nev. 156; *Bryant* v. *Carson Lumber Co.*, 3 Nev. 313; *State* v. *Yellow Jacket S. M. Co.*, 5 Nev. 415; *McCoy* v. *Bateman*, 8 Nev. 126; *Smith* v. *Mayberry*, 13 Nev. 427; *Duquette* v. *Ouilmette*, 13 Nev. 499; *State* v. *C. P. R. R. Co.*, 10 Nev. 47; *Langworthy* v. *Coleman*, 18 Nev. 440; *Solen* v. *V. & T. R. R. Co.*, 13 Nev. 106; *Boskowitz* v. *Davis*, 12 Nev. 446; *Winter* v. *Fulston*, 20 Nev. 260.)

Cassinelli testified that Devencenzi worked for him from July 22, 1893, until January 7, 1902, in his direct examination, at the agreed price of $40 per month, being a period of 8 years, 5 months, and 16 days; that Devencenzi lost days during that time, and that he and Devencenzi never had a settlement. In his cross-examination he admitted that he paid for Devencenzi up to the time the mortgage was given $281.27 and gave him about $300 in money, besides also executing a note and mortgage to Devencenzi for $1,000. Now, according to the testimony of Cassinelli, Devencenzi earned $2,720 from the time the note and mortgage were executed, April 24, 1896, to January 7, 1902, being sixty-eight months at $40 a month. Cassinelli testified that there had never been a settlement between them since Devencenzi commenced to work for him and there had been no account stated as alleged by Devencenzi. Then, according to his own testimony, Devencenzi earned $2,720, less lost days, from April 24, 1896, to January 7, 1902. Cassinelli testified that he paid Devencenzi since that time (if you take his own evidence as the truth)

the $100 Scanavino note, the $500 paid June 6, 1901, which Devencenzi testified he had received no money for, the $140 Cassinelli testified that he paid Joe Quilici, and the $175 Cassinelli testified that he paid Devencenzi in cash, making a total of $915 paid Devencenzi according to Cassinelli; as Devencenzi earned $2,720 according to Cassinelli and Cassinelli only paid him $915, this would leave a balance due Devencenzi of $1,805; now deduct the judgment rendered of $730.46, and you have left $1,074.54 to be deducted for lost time, all of which evidence was before the jury, and they had a right to consider the same.

V.   A receipt is merely evidence and, while it is of the highest and most satisfactory kind and of greater probative effect than most other evidence, it is nevertheless not conclusive, but is merely *prima facie* evidence of the facts revealed by it, and is open to explanation and contradiction by parol, or by any other competent evidence. (*Jenne* v. *Burger*, 120 Cal. 446; *Comptoir* v. *Dresbach*, 78 Cal. 15; *Winans* v. *Hassey*, 48 Cal. 635.) Evidence can be introduced and it can be shown that the receipt was given without consideration. (*Shamper* v. *Hayes*, 25 Ga. 546; Jones on Evidence, sec. 502.)

VI.   Counsel in his brief admits that a settlement was had between plaintiff and defendant, notwithstanding his client swore in his answer and testified on the witness stand that no settlement was ever had between plaintiff and defendant, and then claims that the jury erred in not believing the testimony of defendant. The moment the jury became convinced that the defendant swore falsely as to any material matter they had a right to believe that other portions of defendant's testimony were false. "*Falsus in uno, falsus in omnibus*," is the guide in considering the weight to be given to testimony offered on the trial. When the jury came to the conclusion (as counsel for defendant claims) that defendant was testifying falsely as to the settlement, they naturally came to the conclusion that his testimony as to his paying the $500 in gold to plaintiff for the $500 receipt was also false. Yet counsel finds fault with the jury for not believing his client when he himself admits that his client was unworthy of

belief. How, then, can the supreme court, any better than the jury, find any testimony contradicting the testimony of plaintiff, when he testified that he never received a 5-cent piece for the $500 receipt?

*Alfred Chartz* and *John Lothrop*, for Appellant, in reply:

I. "It is a general rule in actions at law that, in order to enable a plaintiff to recover or a defendant to succeed in his defense, what is proved or that of which proof is offered by the party on whom lies the *onus probandi* must not vary from what he has previously alleged in his pleadings, and this is not a mere arbitrary rule, but is one founded on good sense as well as good law." (22 Ency. of Pl. & Pr. 527; Greenl. Ev. 63; Jones Ev. 235; Rice Ev. 292; Phillips Ev. 205.)

II. It is plain from the foregoing authorities that the introduction of testimony showing that plaintiff went to work for defendant in July, 1893, at $40 a month and board, and that he had paid him only $281 27 during said time, which proof would show defendant indebted over $1,800 to plaintiff, was prejudicial to him.

By the Court, NORCROSS, J.:

This action was brought by respondent against appellant for the sum of $584, alleged to be a balance due from appellant to respondent upon an account stated between them on the 15th day of April, 1901; said account stated to be in full settlement of their accounts to the 1st day of May following. Respondent also alleged a further balance due him for labor and services rendered appellant from the said 1st day of May, 1901, to the 7th day of January, 1902, in the sum of $146.46; making a total indebtedness alleged to be due from appellant to respondent of $730.46. Appellant denied that an account was ever stated between himself and respondent, and denied that he was indebted to him in any sum whatever, but, upon the contrary, alleged that respondent was indebted to him in the sum of $1,012.37, and prayed judgment in his favor accordingly.

The case was tried with a jury, and a verdict rendered in plaintiff's favor for the full amount prayed for in his com-

plaint, and judgment entered in pursuance thereof. This appeal· is from the judgment, and from an order denying defendant's motion for a new trial. Two grounds are urged upon the appeal for the reversal of the judgment and the granting of a new trial, to wit, that the verdict was not supported by the evidence, and errors in law occurring at the trial, and excepted to by the appellant.

There was little testimony offered at the trial bearing upon the material issues, outside of that given by the parties to the action, and their testimony upon all material matters was at such variance that the jury was necessarily compelled to determine as between them. The verdict shows that the jury accepted the testimony of the plaintiff. If his testimony was true, the plaintiff was entitled to a verdict as prayed for. As the jury was the judge of the credibility of the witnesses, this court will not attempt to disturb its conclusions in that respect.

Counsel for appellant argues very forcibly that two receipts offered by the defendant in evidence corroborated the testimony of the defendant, and established that payments had been made to or on account of the plaintiff since the alleged stated account, and for which defendant was not given credit. One of these receipts is dated April 23, 1901, for $100, and was given by one A. Scanavino to the defendant, and acknowledged payment by the defendant of the note of plaintiff to said Scanavino. In reference to this receipt, however, the plaintiff testified that at the time the account was stated between the parties, on the 15th day of April, 1901, it was agreed that the defendant should pay this note, and that the amount of the same was then credited to the defendant. and taken into consideration when the balance alleged to constitute the stated account was arrived at. The other receipt was dated June 6, 1901, and was given by the plaintiff to the defendant, and acknowledged the receipt of $500 on account of· labor. The defendant testified that he paid plaintiff $500 in coin at the time the receipt was given him by the plaintiff. The plaintiff, in his testimony, denied repeatedly and in positive terms that he ever received a cent from defendant as acknowledged by the receipt, but swore

the receipt was given only "for the accommodation of the defendant." The evidence of both the parties relative to the circumstances of the giving of this receipt is very meager. The only attempt to obtain an explanation of what the "accommodation" was that the defendant was to enjoy from the giving of this receipt is shown from the following question and answer: "Q. What was the accommodation? A. That there would be no question about me getting the money if I would sign the receipt for the five hundred dollars, but I never got five cents." With this answer upon the part of the plaintiff, respective counsel permitted the matter to rest. It must be admitted that the answer of the plaintiff is far from lucid as an explanation of the "accommodation" to be extended the defendant. However, from all the testimony of the plaintiff, if believed by the jury, the jury could draw the conclusion that the receipt was given without consideration, and this the jury doubtless did.

It is well settled that a receipt, although evidence of the highest character, is not conclusive, but is merely *prima facie*, evidence of the facts recited by it, and that it may be explained or contradicted by parol. (1 Greenleaf on Evidence, 305; 2 Jones Ev. 502; 22 A. & E. Enc. of L. 2d ed. 582; 23 A. & E. Enc. of L. 2d ed. 983; *Pendexter* v. *Carleton*, 16 N. H. 489; *Gleason* v. *Sawyer*, 22 N. H. 85; *Insurance Co.* v. *Chappelow*, 83 Ind. 429; *Jenne* v. *Burger*, 120 Cal. 446, 52 Pac. 706; *United States* v. *Jones*, 8 Pet. 418, 8 L. Ed. 988.)

Conceding that the law in reference to receipts is as above stated, counsel for appellant further argues that the testimony for and against the receipt is of "equal weight," in that the testimony of the defendant will balance that of the plaintiff, and that therefore "the receipt must have its *prima facie* effect"; citing 23 A. & E. Enc. of L. 2d ed. 986, and authorities therein cited. If the testimony of the plaintiff and defendant was of equal weight with the jury, then undoubtedly the receipt should have controlled. If the only point in the case upon which the testimony of the plaintiff and the defendant was in conflict was in reference to this receipt, it might seriously be questioned if the jury would have been justified in accepting the plaintiff's testimony as

against the receipt and the testimony of the defendant; there being no other evidence or testimony touching the receipt other than the receipt itself and the testimony of the parties. But in this connection it is proper to consider the fact that the testimony of the plaintiff and defendant was conflicting upon every essentially material point in the case, and sharply so. If the jury believed the testimony of either of the parties to the action, it must have rejected as untrue the testimony of the other, not only in reference to the receipt, but as to all, or practically all, the remaining material portion of the testimony. The jury gave the plaintiff a verdict for all he sued for. To do so, it must have believed his testimony upon several other material matters besides that affecting this receipt, and disbelieved that of the defendant. Under this state of facts, can it be said that the verdict of the jury would not be supported by the evidence, when its effect was to negative the force of the receipt? My judgment is that it cannot be so said. "There is not any rule in respect to receipts different from that applicable to any other *prima facie* evidence. To destroy its effect, it must be overbalanced by other evidence laid before the jury, which is to judge whether there is such a preponderance." (23 Enc., *supra*.)

The term "preponderance of evidence" is well defined in an instruction given to the jury in the case of *Strand* v. *Chicago Ry. Co.*, reported on appeal in 67 Mich. 380, 34 N. W. 712, and therein pronounced a "correct" definition of the term. The instruction as given is as follows: "The burden of proof rests upon the plaintiff to make out the facts which I have stated to you are essential to establish his case by a fair preponderance of evidence. By this is meant such evidence as, when weighed with that which is offered to oppose it, has more convincing power in the minds of the jury. It is not a technical term at all, but means simply that evidence which outweighs that which is offered to oppose it. It does not necessarily mean that a greater number of witnesses shall be produced on the one side or the other, but that, upon the whole evidence, the jury believe the greater probability of the truth to be upon the side of the party having the affirmative of the issue." Further commenting upon this instruc-

tion, the court says: "If the evidence of the plaintiff is more probable than that of the defendant, it certainly outweighs it, and if it outweighs it the preponderance is with the plaintiff. * * * One version or the other was the true one. The jury, in determining between them, had the right to weigh the probabilities of the different stories, to ascertain which was correct." (*Strand* v. *Ry. Co.*, *supra; Corniff* v. *Cook*, 95 Ga. 68, 22 S. E. 47, 51 Am. St. Rep. 55; *Savannah Ry. Co.* v. *Wideman*, 99 Ga. 245, 25 S. E. 400.)

In the case now before the court, the jury having plainly given credence to the testimony of the plaintiff as against that of the defendant upon all the material issues of the case, his testimony, in the minds of the jury, outweighed that of the defendant relative to the receipt, and hence the preponderance of the evidence was by the jury determined to be against the facts recited in the receipt.

During the progress of the cross-examination of the defendant, counsel for defendant moved to strike out a portion of defendant's testimony elicited upon cross-examination upon the ground "that you cannot impeach a person by any matter that is not material to the issue," and, further, "that the testimony thus far elicited, or that can be elicited upon the same lines, cannot tend to impeach his testimony, and that the only way that his testimony can be impeached is by showing that on the former trial he testified differently from what he testifies to now." The motion was denied by the court, and this ruling is assigned as error. Upon examination the testimony moved to be stricken out does not appear to have been elicited for the purpose of impeaching the witness, nor could it have tended so to do. It was for the most part in reference to accounts contained in a book of defendant's, a portion of which had been offered in evidence by counsel for defendant upon direct examination. I find no error in the ruling of the court.

For the reasons given, the judgment and order appealed from are affirmed.