# EDWARD L. LEVEY, Respondent, *v.* E. A. FARGO, Appellant.

In an action for damages for improperly sueing out a writ of attachment, it is necessary to aver the attachment was sued out "without probable cause."

If such averment is omitted in the complaint, but words of similar import are employed in lieu thereof, a verdict will cure the defective complaint, even if it was such an one as should not have been sustained on demurrer.

Where a demurrer is interposed to such a complaint upon the general ground that it does not state facts sufficient to constitute a cause of action, goes on to point out the particulars in which the complaint is defective, but does not show the real defect, this Court will not hold it was error to overrule the demurrer if the defendant chooses to answer instead of standing on his demurrer.    This Court will treat the case as if the party had answered without any demurrer.

In an action for maliciously sueing out the writ of attachment, it is necessary to show not only a want of probable cause but also malice in sueing out the writ. It is not sufficient to show malice in *prosecuting* the writ if there was none in sueing it out.

If the writ is sued out by an agent maliciously on his part and without probable cause, he is liable and not the principal.

If the principal maliciously continues the prosecution after he is informed of the fact that the writ was sued out without probable cause, he will be liable to a special action for the damages which accrue after this knowledge is obtained. But the complaint must state these facts correctly.

Proof that the attachment was sued out, not by the defendant but by his agent, would, *prima facie*, be a good defense, but that might be rebutted by proving that the agent acted under the express direction of his principal.

The method of making and settling statements on motion for new trial commented on.

APPEAL from the District Court of the Second Judicial District, State of Nevada, Ormsby County, Hon. S. H. WRIGHT presiding.

The facts of this case are fully stated in the opinion.

*Clayton & Clarke,* for Appellant.

The demurrer should have been sustained, because the complaint did not contain the averment of want of probable cause. " Without foundation in law or fact " is not equivalent. (Drake on Attachments, secs. 732, 734, 736.)

It has been held that the expression, without legal or justifiable cause, is insufficient. (See Drake on Attachment, page 627, sec. 732; see also 3 Cal. 446; 17 Mass. 190; 12 Pick. 324; 9 Conn. 309; 4 Watts & Sargent, 201; 9 O. R. 143; 5 B. Munroe, 544.)

Besides want of probable cause, express malice must be shown. (2 Den. 617; 3 Abbott's N. Y. Digest, 743–4, Nos. 5, 6, 7 and 8.)

There could be no malice on the part of defendant, when he neither sued out the attachment nor heard that it was sued out until a period some weeks subsequent to its issuance.

The defendant would not be liable for the malice of the agent who sued out the attachment. (Drake on Attachments, sec. 727; 7 Alabama, 622.)

Nor would the fact that plaintiff maliciously prosecuted the writ after he obtained knowledge of its issuance sustain this action. (See Drake on Attachment, sec. 734; 4 Mass. 389.)

The *allegata* and *probata* must correspond. (1 Van Sandford's Pleading, pp. 827, 830–31.)

*A. C. Ellis*, for Respondent, filed a brief which contained a review of the facts of the case, but no legal proposition which would be elucidated by inserting it here.

The opinion of the Court was rendered by Justice BEATTY, a full Bench concurring.

This was an action brought for a malicious issuing and prosecution of a writ of attachment.

The pleadings and evidence show that one Bedford and the plaintiff Levey were liquor merchants, and in the course of their trade became indebted in a considerable amount to the firm of C. Fargo & Co. of San Francisco.

C. Fargo & Co. assigned their claim against Bedford & Levey to the defendant in this action, E. A. Fargo. E. A. Fargo adjusted part of the claim with Bedford & Levey, and for the balance suit was brought; an affidavit for attachment was made by one Abe Newberger, acting as the agent of E. A. Fargo; the writ was issued and levied on the property of the plaintiff, he and Bedford having dissolved partnership before the issuance of the writ. Levey & Bedford did not defend the suit instituted against them by E. A. Fargo, but did put in a plea in the nature of a plea in abatement to the writ of attachment.

This plea was sustained, the attachment abated, and then the present action brought by Levey for injury to his goods, business, etc. Fargo demurred to the complaint; the demurrer was overruled; he then answered, and the case was tried before a jury, and judgment was rendered in favor of the plaintiff for seventeen hundred and twenty dollars. Defendant moved for a new trial, which motion was overruled, and an appeal from the order overruling that motion taken to this Court.

The first point made by appellant is that the Court erred in overruling the demurrer. It is contended that the complaint does not state facts sufficient to sustain the judgment, because it does not state that the writ was sued out *without probable cause.* Certainly this judgment can only be sustained on the theory that the writ was issued without probable cause. The complaint does not contain those exact words, but it does

27

contain this allegation: "Yet the said defendant, out of his own malice and ill will, and without foundation in fact or law, and of wantonness, caused the *writ* of *attachment* to be issued from the District Court of the Second Judicial District of the then Territory of Nevada, in a case wherein this defendant was plaintiff, and this plaintiff and the said Bedford were defendants."

Whether this language sufficiently expresses a want of probable cause to sustain the complaint, if the point had been directly raised by a proper demurrer, it is perhaps not necessary in this place to decide. One of the definitions of wantonness given by Webster is "negligence of restraint." If the writ was issued in a spirit of recklessness or "negligence of restraint," it certainly implies that it was issued without probable cause. The language, although not such as should have been used in a pleading, is expressive of nearly the same idea.

Section 71 of our Practice Act provides that "the Court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the parties; and no judgment shall be reversed or affected by reason of such error or defect."

The common law also allowed many formal defects in pleading to be cured by verdict. The rule, as laid down in Chitty, page 673 of Chitty's Pleadings, is thus expressed: "The general principle upon which it depends, appears to be that where there is any defect, imperfection or omission, in any pleading, whether in *substance* or *form*, which would have been a fatal objection upon demurrer, yet if the issue joined be such as necessarily required on the trial, proof of the facts so defectively or imperfectly stated or omitted, and without which it is not to be presumed that either the Judge would direct the jury to give, or the jury would have given, the verdict, such defect, imperfection or omission is *cured by the verdict.*"

Many examples are given in that work of defective pleadings being cured by verdict. Among others is one where suit was brought for malicious prosecution of a criminal action. In such case, it is always necessary to aver in the declara-

tion that the criminal action or prosecution is at an end.   Yet in that case the verdict was sustained, although there was no such averment in the complaint.   Nor in that case were there any words of a similar import.   The case cited by Chitty, page 679, to which we have referred, is a stronger case for sustaining a defective complaint than the one we are considering. We are not disposed to be more rigid than the Courts of England in requiring nicety and precision in pleadings.

It may be contended that although this is a case where the verdict would cure the defect in pleading if issue had been joined without the interposition of a demurrer, yet as a demurrer was interposed, it was error in the Court to overrule the demurrer and force the defendant to take issue on a defective complaint.

If a complaint is clearly defective and a demurrer is overruled, the defendant may, at his option, refuse to answer; then the judgment goes by default and there is no verdict to cure the defects, and the case must be reversed; but if the defendant in such case chooses to answer rather than stand on his demurrer, does he stand, after answer filed, in any better position than if he had answered in the first place ?   Whatever may be the general rule on this subject, we certainly think this defendant stands in no better position than if he had answered without demurrer.   The grounds of demurrer as set out are as follows:

*First*—The complaint does not state facts sufficient to constitute a cause of action, in this: That this suit is brought in the name of the plaintiff alone, when the complaint shows that T. J. Bedford was a partner with plaintiff in the goods, wares and merchandise, and also in the business set out in plaintiff's complaint, and that no dissolution of copartnership between plaintiff and Bedford is shown to have taken place prior to the issuance and levy of the writ of attachment referred to in said complaint.

*Second*—That there is a misjoinder of parties plaintiff, for the reasons above stated."

The demurrer does not point out the defect now complained of.   Indeed, the defendant seems to purposely confine his objection to another point, and he ought not to stand in rela-

tion to this point in a better position than if he had answered without the interposition of a demurrer.   We hold, then, if there was a defect in the complaint which would have invalidated a judgment by default or on demurrer, it is cured by the verdict.

It is also contended by appellant that plaintiff was bound to show both the want of probable cause and malice in the defendant to entitle him to a verdict.   That in this case it was not sufficient to show malice in prosecuting the writ, after it was sued out, but that it was issued by the malicious procurement of the defendant.

Undoubtedly appellant is correct in both legal propositions. If an agent maliciously, and without probable cause, sues out an attachment without instructions from his principal, the agent, and not the principal, is responsible in damages. If the principal, after he finds out that his agent acted maliciously and without probable cause, continues the prosecution of the attachment, he will be responsible for the damages which arise *after* the facts of the case come to his knowledge.   But there is no ground of action against the principal for the original sueing out of the attachment.

The complaint in such case, if against the principal, should aver the malicious prosecution of the writ after he discovered it had been issued without probable cause.

This complaint contains no such allegations.   If then, the facts appear clearly from the statement, as claimed by appellant, that there was no proof introduced of want of probable cause, that there was no proof that defendant caused the writ of attachment to issue, and no proof of malice in the issuing or prosecuting the writ, certainly the judgment cannot be sustained.

This brings us to the examination of the statement as it appears in the transcript.   Section 195 of the Practice Act provides in regard to statements as follows:  " Such statements, when containing any portion of the evidence of the case, and not agreed to by the adverse party, shall be settled by the Judge on notice."

The statement in this case is certainly not settled by the Judge, and can hardly be said to be agreed to by the opposite

party.   At least it is rather difficult to say what the adverse party did agree to.   Appellant first made a statement.   Then there is an order of Court to this effect: " The plaintiff herein is allowed to file amended statement on new trial."

Then comes a statement by respondent (plaintiff) which commences in this way: " Now comes the plaintiff, by his attorney, in the above entitled cause and submits this, his amended statement of facts, proved at the trial of the cause, and asks that the same be made a part of the statement of facts on motion for a new trial herein."   This amended statement is signed by plaintiff's (respondent's) counsel as the original statement was signed by appellant.   Neither statement is signed by both counsel nor settled by the Court.   If there is a statement in the case, what is it ?   Does it consist of both statements combined, or are we only to look at the amended statement ?   The language used in the order of Court would indicate that an amended statement was to be filed which would be in itself a complete statement, and supercede the original statement.

Where a party is dissatisfied with a statement on motion for new trial made by his adversary, he has three methods of correcting it.

If the statement is wholly incorrect, he may make an *amended statement*, containing all the evidence touching those points on which the moving party relies in his motion, and ask that it may be substituted for the original statement; or secondly, he may make *amendments to the original statement* by moving to strike out some portions and add or substitute others; or thirdly, if the original statement is correct as far as it goes, but the adverse party thinks some additional evidence should be contained in the statement to fairly present the case, he may make a supplemental statement containing that additional evidence, and ask that it may be attached to and made a part of the original statement.   In either case after the statement is properly amended, it should be either agreed to by both parties or settled by the Judge.   In the case before us, we hardly know whether to treat the amended statement as a substitute for the original, or as a supplemental statement of facts omitted in the original.   The original statement uses the expression " it

is in evidence," etc., going on to state facts which would be a complete defense to the action. The amended statement reads thus: "Plaintiff * * submits this his amended statement of facts proved at the trial. 1st. That," etc. Here follows a statement of facts at variance with those stated by appellant, and which, if true, would support the verdict and judgment. The original statement says certain facts were *in evidence*. The amended statement says that certain things "*were proved.*" The two sets of facts are in many particulars contradictory and inconsistent. If we allow both statements to stand, we can only conclude that one or more witnesses were swearing to a certain state of facts, and one or more witnesses on the other side were swearing to another state of facts totally inconsistent with statements of the first witnesses. This being the case, we cannot disturb the action of the Court below upon any point where there is an apparent conflict of testimony. Upon one material point alone there seems to have been no conflict of testimony. The original attachment was sued out not by the defendant here, but by his agent, Abe Newberger. This would seem to be a *prima facie* defense to this action. That defense might be rebutted by showing that although Abe Newberger made the affidavit for attachment, still he was instructed so to do by his principal, Fargo.

Appellant's statement shows that it *was in evidence*. Fargo never made an affidavit of attachment that the affidavit was made by Newberger on the representations of Bedford; that Fargo had no knowledge of the making of affidavit or issuance of writ for several weeks after it took place, etc. On the other hand, respondent's statement shows it was *proved* that Fargo, shortly after the issuance of the attachment, in the month of July, informed Bedford by letter addressed to him at Austin, that he had commenced the suit by attachment, etc. The statement of this portion of the evidence is certainly not very satisfactory, still the proof on this point may have been sufficient to justify the jury in finding that the suit was commenced and the writ issued under the direction of Fargo. Indeed, as Fargo seems to have lived in Virginia, only sixteen miles distant, the reasonable presumption is that his agent would not have proceeded without consulting with him,

and slight circumstances might have justified the jury in believing he was consulted before sueing out the writ.

It was doubtless either Newberger or defendant himself who proved Fargo had no knowledge of the writ's being sued out by his agent.

Bedford and Newberger were in conflict on other points of testimony; the jury seem to have believed Bedford and not Newberger. If they disbelieved his testimony in other particulars, they had a right to disbelieve it in regard to suing out the attachment. Whilst the Court is by no means satisfied that there was any sufficient evidence of Fargo's connection with the original sueing out of the attachment, they are not satisfied with the contrary propositions, and upon the well settled principle that all presumptions and intendments are to be taken in favor of the judgment, they cannot interfere with the action of the Court below. We are the better satisfied with this result because the first instruction given by the Court below clearly indicates the opinion of the Judge that the jury could only find for the plaintiff on the theory that the attachment was sued out by the express authority and with the knowledge of defendant. The Court, entertaining that opinion of the law, must have granted a new trial if there was no testimony to show Fargo authorized or knew of the intended issuance of the attachment before it was done. We may observe here, too, that the Judge's instructions in regard to malice and want of probable cause were based on sound law, and properly submitted the case to the jury on these points, so that although want of probable cause may not have been properly and technically charged, yet the point was fairly submitted to the jury.

The judgment of the Court below must be affirmed.