[No. 2066]

B. F. LEETE AND ISABEL M. LEETE (HIS WIFE), WILLIAM M. LEETE, BEN M. LEETE, AND MATT LEETE, RESPONDENTS, v. SOUTHERN PACIFIC COMPANY (A CORPORATION), APPELLANT.

[139 Pac. 29]

1. APPEAL AND ERROR—REVIEW—VERDICT.
    This court will not disturb a verdict if there is any substantial evidence to support it, especially where a motion for nonsuit has been overruled and a motion for a new trial has been denied.

2. TRIAL—ARGUMENT—ACTION OF COURT.
    Counsel's improper criticism of defendant by statements outside of the evidence, in view of the court's direction to disregard them and of the refusal to grant a new trial after verdict for plaintiff, *held* not to warrant a remand for a new trial.

APPEAL from the Second Judicial District Court, Washoe County; *John S. Orr*, Judge.

Action by B. F. Leete and others against the Southern Pacific Company, a corporation. Judgment for plaintiffs, and defendant appeals. **Affirmed.**

*Cheney, Downer, Price & Hawkins*, for Appellant.

*Mack, Green & Heer*, for Respondents.

By the Court, TALBOT, C. J.:

On the 29th day of June, 1910, the defendant brought a suit in the district court of Churchill County against the Eagle Salt Works Railroad Company, a Nevada corporation doing business in Lyon and Churchill Counties, to recover $30,245.43 and costs of suit upon a note and mortgage dated the 26th day of December, 1903, executed by Eagle Salt Works Railroad Company to defendant. During the time mentioned the plaintiffs were owners of all the capital stock and were directors of the Eagle Salt Works Railroad Company. While that action was pending, and on or about the 11th day of October, 1910, the plaintiffs and defendant herein and Eagle Salt Works Railroad Company entered into the following: "Memorandum of Agreement. Eagle Salt Works stockholders

VOL. 37—4

will execute to the Southern Pacific Company bills of sale of the stock that the Southern Pacific Company holds as collateral security. Will cancel that stock on the books of the company and issue the entire capital stock of Eagle Salt Works to the Southern Pacific Company. Present officers will resign and put the succeeding officers or the Southern Pacific Company, in possession of the Eagle Salt Works. Present owners step out and succeeding owners step in without interruption of business. The competent authorities of the Eagle Salt Works Railroad Company will issue the capital stock of the Eagle Salt Works Railroad Company to the Southern Pacific Company, resign and turn over the property of the Eagle Salt Works Railroad Company to the succeeding owners. Present owners step out and succeeding owners step in without business interruption. It is agreed that the present owners will collect all outstanding accounts and close out stock in Reno and Beckwith agencies, also pay current bills to the day that the present owners turn the property over to their successors. Also that the present owners will pay the August pay roll, the Southern Pacific Company to dismiss all suits against the Eagle Salt Works and against the Eagle Salt Works Railroad Company at its own expense and charge. Mack & Green, Attorneys for Eagle Salt Works and Eagle Salt Works Railroad Company. Chas. R. Lewers, Attorney for S. P. Co. Oct. 11th, 1910."

Under this agreement, on the 18th day of October, 1910, the defendant took over from plaintiffs and became the owner of all the capital stock of the Eagle Salt Works Railroad Company, and took possession of the property and affairs of that company.

In the amended complaint it is alleged that by virtue of this agreement the plaintiffs became the owners of and entitled to collect all outstanding accounts then due the Eagle Salt Works Railroad Company, and that the plaintiffs paid all the current bills and August pay-roll of the Eagle Salt Works Railroad Company, as provided by the agreement. It is further alleged that between the

3d day of March, 1906, and the 18th day of October, 1910, the Eagle Salt Works Railroad Company was carrying on the business of a railroad, transporting and hauling goods between Leete and Luva, a station on the line of defendant, a distance of 14 miles, and that during those times the defendant was engaged in the business of a railroad company, transporting and hauling wares and merchandise through the State of Nevada and other states; that prior to the 3d day of March, 1906, the Eagle Salt Works Railroad Company and the defendant entered into an agreement to transport and haul goods and merchandise over the respective railroads, and providing that defendant was to retain part of the charges for its services in hauling, and was to pay to the Eagle Salt Works Railroad Company its share for the transportation of merchandise; that between the 3d day of March, 1906, and the 18th day of October, 1910, the defendant collected for hauling merchandise over the railroads of the two companies $11,958.62, of which sum the amount of $3,724.53 became due from the defendant to Eagle Salt Works Railroad Company as its proportion on freight or charges so earned, no part of which has been paid by the defendant, and that the same was due to the Eagle Salt Works Railroad Company at the time of the making of the aforesaid contract, and by reason of that contract became, upon the 18th day of October, 1910, and is now, due and owing from the defendant to the plaintiffs, with interest.

In the answer it is alleged that the defendant has fully complied with the terms of the agreement before mentioned, and it is denied that by virtue of the agreement, or otherwise, the plaintiffs became the owners of and entitled to collect the outstanding accounts due the Eagle Salt Works Railroad Company, or that the plaintiffs paid the current bills of that company, as provided in the agreement, or that the sum of $3,724.83 became due from the defendant to the Eagle Salt Works Railroad Company as its portion of freight charges, or otherwise. It is alleged that there was credited to the Eagle Salt Works Railroad Company by the defendant as its

division of freight earnings the sum of $3,825.71; that prior to the 1st day of October, 1906, it paid to that company on account of that credit $336.42; that after that time, by agreement, the defendant applied all of the credits on the division of freight earnings toward the cancelation of the indebtedness of the Eagle Salt Works Railroad Company to the defendant.

Not only has the defendant denied all indebtedness, but by way of defense the answer details items relating to interline freight charges collected and regarding the cost of building of Eagle Salt Works Railroad.

The jury rendered a verdict in favor of the plaintiffs for $1,700. Two learned judges gave the case careful consideration. One overruled a motion for a nonsuit, and his successor denied the motion for a new trial.

There is much evidence regarding statements and understandings in relation to the agreement of October 11, 1910, above quoted, and regarding the transactions and accounts beween the defendant and the Eagle Salt Works Railroad Company. The agreement as quoted makes no specific reference to the demand set up in the complaint. The statement that "it is agreed that the present owners will collect all outstanding accounts, * * * also pay current bills to the day that the present owners turn the property over to their successors," cannot be construed as providing that any amounts remaining due the Eagle Salt Works Railroad Company on account for interline freight charges were relinquished by that company to the defendant. It is unnecessary to make any extended review of the hundreds of pages of evidence, which is not without conflict, at least concerning certain statements affecting the transactions involved and regarding the understanding of the parties or agents. The testimony does not show specifically that these charges were to be relinquished, and the testimony is not in harmony as to whether, in a general way, all demands which would include these charges were to be canceled.

After an examination of the record, we feel justified in

adopting the following portion of the opinion of the district court in overruling the motion for a new trial: "Some of the testimony as to what was said by Mr. Lewers is capable of being so construed that it would cover outstanding accounts against the Southern Pacific Company and therefore work an estoppel; but the testimony of other witnesses, particularly that of Mr. Stewart, is capable of no such construction, and, taken in connection with the letters above referred to, I am of the opinion that the jury was justified in finding that no estoppel existed, particularly as the language favoring the defendant's view might be considered as explanatory of, or relating to, what was undoubtedly the principal point sought to be brought out by Mr. Lewers in his letters and in his demand of Mr. Leete, namely: Whether there were outstanding notes, merchandise accounts, or other indebtedness, or tort claims against the Eagle Salt Works or Eagle Salt Works Railroad Company, for which the Southern Pacific Company by taking over this stock, might become liable directly or indirectly. I am further of the opinion that the jury was justified in finding, as it must have done, the language of the protocol 'outstanding accounts' was sufficiently broad to include the claims of the plaintiffs for interline freight shipments and that this language was sufficient to take these accounts out of the settlement effected by the dismissal of the suits pursuant to the agreement."

[1] As often held, this court will not disturb the verdict if there is any substantial evidence to support it. The overruling of the motion for nonsuit and the denial of the motion for the new trial by the district court, which was empowered to grant a new trial if the evidence was insufficient, strengthens the verdict.

[2] Exception was taken to criticisms of the defendant made by counsel. The statements in this connection were outside of the evidence, were unwarranted and improper. However, as the jury was directed to disregard them and find a verdict only in accordance with

the evidence, and in view of the refusal of the court to grant a new trial, and of all that is disclosed by the record, they are not considered as warranting the remanding of the case for a new trial.

The foregoing are the objections most seriously urged in this court. Many other exceptions were taken, but we do not find any reversible error disclosed by the record.

The judgment and order of the district court are affirmed.

## ON PETITION FOR REHEARING

*Per Curiam:*

Petition for a rehearing denied.

NORCROSS, J.: I dissent.