# DEISS *v.* SOUTHERN PACIFIC COMPANY Et Al.

No. 3078

August 3, 1935.                    47 P. (2d) 928.

*Brown & Belford,* for Appellants:

*C. E. Robins* and *Merwyn H. Brown,* for Respondent:

## OPINION

By the Court, TABER, J.:

On the afternoon of December 2, 1930, at the city of Winnemucca, Christian Deiss, for some unknown reason, drove his automobile directly in front of appellant company's freight train, "Extra 4373 West," the engine of which collided with said automobile at a point where Bridge street crosses said company's tracks. The automobile, with Deiss in it, was picked up and carried on the pilot of the engine until the train stopped at the station—the engine stopping at a

point approximately 1,287 feet from said Bridge street railroad crossing. Deiss was here removed from the automobile and taken to a hospital, where he died on the following day; death being due, not to physical injuries, but to profound shock.

Respondent, Deiss' widow, brought this action as administratrix of his estate to recover damages from appellant company and appellant B. Thoni, engineer operating the engine at the time of said accident. Appellants filed a general demurrer, but so far as the record shows the demurrer was not presented to or ruled on in the trial court. Appellants later answered the complaint, denying any negligence on their part and setting up two affirmative defenses alleging contributory negligence on the part of Deiss. In her reply to the new matter in said answer, respondent denied that Deiss' negligence alleged in the two affirmative defenses contributed to or was the cause of his death.

The case was tried with a jury in the Sixth judicial district court, county of Humboldt. In his opening statement, counsel for respondent admitted that Deiss was careless in driving his automobile onto the crossing directly in front of the oncoming train, but told the jury that a verdict would be asked upon the ground of appellants' negligence in not stopping the train within some 350 feet from the point of collision.

At the conclusion of respondent's presentation of evidence, appellants moved for a nonsuit, which was denied; whereupon they rested, and then moved the court to direct the jury to find a verdict for the appellants. The court also denied this motion. The jury returned a verdict for respondent in the sum of $5,000. Appellants moved for a new trial, which was denied. Thereupon appellants appealed to this court from the judgment, and from the order denying a new trial.

■ Appellants contend that the complaint fails to state facts sufficient to constitute a cause of action. Respondent argues that this objection has been waived by appellants, and that the defect, if any, has been cured by the verdict, for the reason that the point was not

urged in the court below. Counsel for respondent are in error on this point; for, while in many states such defect may be waived or cured, it is settled in Nevada, as pointed out in appellants' closing brief, that where this defect exists, it is not waived, or the defect cured by verdict, by reason of the fact that it was not urged in the trial court. Nielsen v. Rebard, 43 Nev. 274, 183 P. 984; Nichols v. Western Union Tel. Co., 44 Nev. 148, 191 P. 573; N. C. L. sec. 8601.

■ It is true, however, as stated in Nielsen v. Rebard, supra, that "courts do not look with favor upon objections of this kind when made for the first time in the appellate court"; and respondent is correct in her position that after verdict the complaint will receive a liberal construction. Baldwin v. Wells (Mo. App.), 27 S. W. (2d) 435; Gynther v. Brown, 67 Or. 310, 134 P. 1186; Stevens v. Westport Laundry Co., 224 Mo. App. 955, 25 S. W. (2d) 491; Blashfield Cyc. of Automobile Law and Prac. (Permanent Edition, 1935), sec. 5932.

To better understand appellants' contention and this court's ruling thereon, the appropriate portions of respondent's complaint are here given:

"That on the 2d day of December, 1930, and for several years prior thereto, said portion or part of said railroad and tracks and the space between said track and that immediately contiguous thereto were frequently and constantly used as a passage or crossing way by the public generally, in walking, driving automobiles, and passing and repassing and along, over, and across the same, all of which was with the knowledge and acquiescence of the defendants, so that and by reason thereof it became and was the duty of the defendant, Southern Pacific Company, and its servants, and particularly the defendant, B. Thoni, in charge and control of its locomotive engines whilst operating and running said engines near to and over and along said portion or part of said railroad and tracks to exercise ordinary care and to keep a reasonable lookout for such persons as the defendants might reasonably expect to be upon or dangerously near to and about to go upon said

railroad and tracks at the part or portion thereof aforesaid in order to discover and avoid injuring them.

"That on the 2d day of December, 1930, the said Christian Deiss, then and there occupying and driving an automobile, ran the same in front of an engine then attached to a train of 77 cars, and known as Train Extra West No. 4373, belonging to the defendant, Southern Pacific Company, and in control of the defendant, B. Thoni, who was then and there the engineer on said engine.

"That at the same time, the said engineer had a continuous, full and unobstructed view of the said Christian Deiss, then and there driving said automobile upon said railroad and tracks, for the distance of about fifty yards.

"That the said train so operated by the said defendant, Thoni, was being operated at a speed of about thirty miles per hour.

"That the defendant, Southern Pacific Company, and the defendant, Thoni, its locomotive engineer and servant in charge and control of said locomotive engine, carelessly and negligently failed to discharge their duties as aforesaid and did not use ordinary care, or any care whatever to keep a reasonable lookout to discover the said Christian Deiss aforesaid as it was his duty to do, but he kept no reasonable lookout whatever, and that the said engine ran into and carried the said Christian Deiss and the said automobile in which the said Deiss was then and there seated, a distance of more than 1,100 feet and by reason whereof the said Deiss, on the 3d day of December, 1930, died from shock to his nervous system.

"That from the position of the defendant Thoni, and from his place in and on said engine, the said engineer could have stopped said engine and cars in a distance of 250 feet, and that the life of the said Christian Deiss would thereby have been saved.

"That the said defendant, Thoni, then and there and at the time of striking the automobile of the said Christian Deiss, knew, or had good reason to believe that

the said Christian Deiss was not aware of the danger the said Christian Deiss was then in and that the engineer, the said defendant Thoni, saw the said Deiss in such a position and in time to prevent injury to the said Deiss, and in time to have prevented the said Deiss from dying of shock.

"That the said Deiss, at the time of his death, was of the age of about 57 years."

■ The basis of the last clear chance doctrine, as set forth in the 1935 permanent edition of Blashfield's Cyclopedia of Automobile Law and Practice, is this: "A plaintiff who has negligently placed himself or his property in a situation of imminent peril and is either unconscious of the situation, or unable to avoid the danger, or both, may nevertheless recover damages of the defendant who negligently inflicts injury, if the defendant could have avoided the injury after discovering the plaintiff's peril." Vol. IV, p. 536.

■ The complaint in the case at bar, while imperfectly drawn, contains, either directly and positively on the one hand, or by necessary implication or reasonable inference on the other, all the essential elements of a last clear chance case. That deceased was in a position of peril from which he could not extricate himself clearly appears from the allegation that he and the automobile he was driving were picked up by the pilot of the engine when the train was traveling about 30 miles per hour and carried more than 1,100 feet. It is expressly alleged by direct allegation that it was the duty of defendant and its servants "to exercise ordinary care and to keep a reasonable lookout for such persons as the defendants might reasonably expect to be upon or dangerously near to and about to go upon said railroad and tracks at the part or portion thereof aforesaid in order to discover and avoid injuring them." It also appears from the complaint that defendants had actual or constructive notice of deceased's peril. The allegations of the complaint are sufficient to show, further, that defendants,

after they became aware or should have become aware of deceased's peril, had the present ability, with means in hand, to have averted Deiss' death, that they failed to do so, and that by reason thereof Deiss lost his life. Pollard v. Oregon Short Line R. Co., 92 Mont. 119, 11 P.(2d) 271; Baldwin v. Wells, supra; Stevens v. Westport Laundry Co., supra; Banks v. Morris & Co., 302 Mo. 254, 257 S. W. 482; Louisville & N. R. Co. v. Scott, 222 Ala. 323, 132 So. 29.

There does not appear to be any direct or positive allegation in the complaint that defendants, after Deiss' peril was or by the exercise of ordinary care should have been discovered, failed to use ordinary care in not stopping the train within the distance it could reasonably have been stopped; but, as stated in Illinois Cent. R. Co. v. Tolar's Adm'r., 169 Ky. 114, 183 S. W. 242, 244, "a failure to use ordinary care to avoid injuring decedent, who was a member of the public, after his peril was or might have been discovered by the exercise of ordinary care, was necessarily included in the charge that the engineer failed to keep a lookout, and failed to take such care as would protect the public at the crossing."

■■■ Appellants next contend that there was no evidence proving or tending to prove that Thoni, the engineer, saw the deceased, and that hence the last clear chance doctrine does not apply. We are fully aware of the numerous decisions of courts of high standing supporting the rule that actual perception by a defendant of plaintiff's peril is necessary to bring a case within the humanitarian doctrine. This court, however, is clearly satisfied that the better rule makes actual perception unnecessary, and that if the defendant "would have discovered plaintiff's situation and thus had reason to realize the plaintiff's helpless peril had he exercised the vigilance which it was his duty to the plaintiff to exercise" [Restatement of the Law, Torts, vol. 2, sec. 479], the case comes within the aforesaid doctrine [Week v. Reno Traction Co., 38 Nev. 285,

149 P. 65; Pollard v. Oregon Short Line R. Co., supra; Payne v. Healey, 139 Md. 86, 114 A. 693; Berry, Automobiles (7th ed.), p. 420; Linney v. Chicago, M. St. P. & P. R. Co., 94 Mont. 229, 21 P.(2d) 1101; Thompson's Commentaries on the Law of Negligence, sec. 1629; 2 Sherman & Redfield on Negligence (5th ed.), 783]. It may be observed here that it was the duty of the engineer and fireman to keep a vigilant lookout as they were approaching the Bridge street crossing. Pollard v. Oregon Short Line R. Co., supra; Payne v. Healey, supra; Smith v. Chicago Great Western R. Co. (Mo. App.), 282 S. W. 62.

■■ We have next to consider appellants' claim that there was no evidence proving or tending to prove that the train could have been stopped in a shorter distance than it was. This contention is wholly without merit. The witness Wrede testified that the train started to slow down when it was about opposite the center of the Southern Pacific warehouse, and that it came to a gradual stop 30 or 35 feet east of the yardmaster's office. Witness Davis testified that the train began to make a slow stop some 300 feet west of the Bridge street crossing; that it began to "slow up slowly. He made a slow stop." Witnesses Davis, Beach, Wagner, and Lillie testified regarding emergency and service application of air brakes; the high class of equipment on the Southern Pacific engines, including the engine that hauled the particular train which figured in said accident; that such a train could be stopped in from 300 to 400 feet. There was ample evidence to justify its submission to the jury on the particular issue in question. Westerdale v. Northern Pac. R. Co., 84 Mont. 1, 273 P. 1051; Citizens' St. R. Co. v. Hamer, 29 Ind. App. 426, 62 N. E. 658, 63 N. E. 778; Payne v. Healey, supra; McMahon v. Joplin & P. R. Co., 96 Kans. 271, 150 P. 566; Hoyer v. Lake Shore Electric R. Co., 104 Ohio St. 467, 135 N. E. 627; Cleveland C. C. & St. L. R. Co. v. Henson, 54 Ind. App. 349, 102 N. E. 399. In making out a prima-facie case, we do

not consider that it was necessary for plaintiff in the court below to show that the service brakes on the engine had not been applied at the time of the collision, or that the brakes on the engine or train were in good condition. Such matters were peculiarly within the knowledge of the defendants and, if true, could properly have been offered in behalf of the defendants.

In connection with the matter now under discussion it is not amiss to observe that where, as in this case, no evidence was offered in behalf of the defendant, the evidence is to be construed most favorably for plaintiff, and every fact must be deemed established which the evidence tends to prove. Westerdale v. Northern Pac. R. Co., supra; Hoyer v. Lake Shore Electric R. Co., supra; Gambling v. Missouri Pac. R. Co. (Mo. App.), 40 S. W.(2d) 766; Gardenhire v. St. Louis - San Francisco R. Co., 224 Mo. App. 586, 31 S. W.(2d) 113; Gordon v. Postal Telegraph-Cable Co. (Mo. App.), 24 S. W.(2d) 644.

The fourth point urged upon the court by appellants on this appeal is that there was no proof that the negligence of appellants, if any, was the proximate or any cause of the death of Deiss. It is admitted by respondent that there is insufficient evidence to hold appellants liable for the collision, and as respondent's evidence indicated that the train could have been stopped within 350 feet of the crossing, it follows that in order to uphold the verdict and judgment of the trial court it must appear that there was sufficient evidence to warrant that court in submitting to the jury the question as to whether the shock from which Deiss died was received easterly or westerly of a point approximately 350 feet westerly from said Bridge street crossing. Appellants' position is that there was no evidence whatever as to when the fatal shock was received, or even when it is probable that it was received. Therefore, they argue, the verdict must necessarily have been based purely upon guess, surmise, speculation, and conjecture. For this reason alone they contend

that the district court should not have submitted the case to the jury. In support of their argument counsel cite Giannini v. Southern Pacific Co., 98 Cal. App. 126, 276 P. 618; Cox v. St. Louis - San Francisco Ry. Co., 223 Mo. App. 14, 9 S. W. (2d) 96, and Plinkiewisch v. Portland Ry. L. & P. Co., 58 Ore. 499, 115 P. 151. In order to understand appellants' contention it is proper that a few additional facts should here be stated.

When the train and automobile collided, the automobile, with Deiss in it, was picked up and carried on the pilot of the engine to a point approximately 1,287 feet westerly from the Bridge street crossing. The automobile rested more on the right than on the left side of the pilot, the rear end extending somewhat beyond the right side of the pilot. One of the rear wheels on the automobile was crushed and one end of the rear axle, at a point about 50 feet west of said crossing, began to drag along the right side of the track, making a furrow which continued to the place where the engine finally stopped; Deiss being still in the automobile but leaning through the window of his car and holding on to an iron bar on the pilot. He was removed from the automobile almost immediately after the train had stopped. His hands, when he was being taken from the wreckage, were clasped so tightly around the iron bar on the pilot that it was necessary to pry his fingers loose. He had a look in his eyes described by one witness as "wild," and which another witness testified he would never forget. When the doctor arrived at the place where Deiss was removed from the automobile and engine pilot, he found "a very rapid weak heart action, very slow respiration * * * no pulse." The only physical wounds were a slight scalp wound and a slight wound of the right leg. The doctor testified that the physical wounds were not such as to cause death and that death was the result of profound shock. The train was traveling about 25 or 30 miles per hour at the time of the collision. The day was warm and clear.

■ We are of the opinion that the district court was correct in its view that there was sufficient evidence on this issue to be submitted to the jury. It is obvious that no one could or can say with certainty at what point between the Bridge street crossing and the place where Deiss was removed from the automobile the shock became so grave as to cause death. But we are not prepared to say that where, as in this case, appellants negligently dragged the automobile some 900 feet farther than the point where the train could with reasonable and ordinary care have been stopped. Deiss being all this time alive and trying desperately to save himself, the trial court was not justified in submitting the case to the jury, nor that the jury was not justified as reasonable men in finding that the evidence preponderated in favor of the fatal shock having been received westerly, rather than easterly, from the place where the train could have been stopped. Direct or positive evidence is not always necessary on such issues. Circumstantial evidence may be and frequently is sufficient to warrant the submission of such cases to a jury. Westerdale v. Northern Pac. R. Co., supra; Hoyer v. Lake Shore Electric R. Co., supra; Cleveland C. C. & St. L. R. Co. v. Henson, supra.

■ Appellants assign as error the action of the trial court in sustaining an objection to a question asked Dr. Pope on cross-examination. After Dr. Pope had testified that the physical injuries were not such as to cause a nervous shock and that Deiss died from shock, counsel, on cross-examination, asked the witness the following question: "Assuming that he (Deiss) was riding in the car across the Bridge street crossing, and that his car was struck by this engine which you saw there, and the engine was, the car was carried on the pilot of the locomotive down to the point where you saw the wreckage, or near thereby, and that Deiss remained in the car, or on the pilot until the engine stopped at the point where you saw it  *  *  *  could you tell from those facts, if you so believe it to be a fact, at

what point he received the shock that produced his death?"

To this question respondent objected upon the ground that it was not proper cross-examination. The objection was sustained. We are of opinion that this was not error. The testimony of Dr. Pope, who was appellant company's district surgeon, was confined strictly to the cause of the death. Dr. Pope did not witness the accident, and we do not believe that the hypothetical question asked by appellants' counsel comes within the scope of cross-examination. 70 C. J. pp. 626, 653–655.

Appellants assign as error the action of the lower court in giving instruction No. 22 and the refusal by said court to give appellants' requested instructions 1, 6, 8, 10, and 11. The questions of law involved in this assignment have been discussed in this opinion. We find no error in giving the instruction objected to or in refusing to give the said instructions requested by appellants.

The judgment and order appealed from are affirmed.

DUCKER, C. J.: I concur.

COLEMAN, J., dissenting:

Plaintiff concedes that the deceased was negligent in undertaking to cross the railroad track. This being so, the burden of proof is upon her to show that the deceased received the shock which caused his death, at some other time. It is the theory of the plaintiff that he received it at some indefinite point more than 350 feet west of the point of collision. There is no evidence upon which to base this contention. The doctor might have been able to give expert evidence on this point, but plaintiff did not want that evidence—at least did not interrogate him as to it—though attention was directed to it. 22 C. J. p. 111.

The logical inference is that the shock was received at the time of the collision. At least, it so seems to me. The very word "shock" indicates a condition produced by a sudden incident. Deceased received no physical

injury of consequence — hence his shock was due to fright—a mental condition—incident to the collision. It may be that the effect of the shock may have been more serious as the nervous strain upon the deceased was prolonged, but that is not the theory of the plaintiff, and there is not a scintilla of evidence in the record upon which to base a conclusion to that effect.

I think the case of Giannini v. Southern Pac. Co., 98 Cal. App. 126, 276 P. 618, is in point.

I do not deem it necessary to consider the other points made.

### On Petition for Rehearing

January 9, 1936.

For former opinion, see 56 Nev. 151, 47 P.(2d) 928.

*Brown & Belford,* for Appellants.

*C. E. Robins* and *Merwyn H. Brown,* for Respondent.

## OPINION

By the Court, TABER, J.:

While this court agrees with appellants upon the proposition of law that verdicts cannot rest upon mere surmise, speculation, conjecture, guess, supposition or imagination, we cannot agree with their contention that the verdict of the jury in this case was arrived at in such manner. In our opinion the verdict was based upon facts established by substantial evidence. The difference between appellants and this court, as was said in Solen v. V. & T. R. R. Co., 13 Nev. 106, at 146, arises not so much upon the existence of the rule as to its application. In the petition for rehearing, as in their opening brief, appellants rely upon the cases of Giannini v. Southern Pacific Co., 98 Cal. App. 126, 276 P. 618; Cox v. St. Louis - San Francisco Ry. Co., 223 Mo. App. 14, 9 S. W.(2d) 96, and Plinkiewisch v. Portland Ry. L. & P. Co., 58 Ore. 499, 115 P. 151. These three cases were mentioned, but not discussed, in our former opinion. Inasmuch, however, as no case on all fours with the one at bar has been found, either by court or counsel, and because said cases are in some respects similar to the instant one, we deem it proper and fair to the appellants that we should indicate why we have not considered them controlling.

In Giannini v. Southern Pacific Co., supra, the train, which was moving at the rate of about five miles an hour, proceeded 35 feet beyond the crossing where the collision took place. The testimony of an expert engineer, that the engine could have been stopped within

10 feet after applying the emergency brakes, was thoroughly discredited, it clearly appearing from the evidence that the rails were wet, not dry, as testified by said expert, and that the wheels of the engine slid a distance of 18 feet after they were locked with the brakes. The uncontradicted testimony of the train crew was that when it became obvious that deceased was attempting to cross the track, the switchman gave the engineer the emergency stop signal, jumped from the car, and shouted to the deceased to attract his attention, and that the engineer immediately applied the emergency brakes and did everything he could to bring the train to a stop. Death was instantaneous, deceased's brains having been knocked out. In said case the court refused to apply the last clear chance doctrine at all. The court said, "Certainly the doctrine of last clear chance never meant a splitting of seconds when emergencies arise," and again, "The words mean exactly as they indicate, namely, last clear chance, not possible chance." It is very clear to this court that the case at bar is neither a possible chance case, nor one involving a splitting of seconds. In the Deiss case there is clear and satisfactory evidence showing that the train proceeded 1,287 feet from the point of collision, whereas it could have been stopped within 350 feet from that point. In the Giannini case the court of appeal held that defendants' negligence could be determined only by speculation. In the Deiss case the negligence of defendants, from a point approximately 350 feet west of the Bridge street crossing to the place where the engine stopped, is clearly established by positive and expert testimony. The statement of the court in Giannini case to the effect that the place where the injuries were received could be determined only by speculation may well be applicable under the facts of that case. It is our opinion that it is not applicable in the case at bar. In the Giannini case the court said that the burden was upon plaintiffs to show that the injuries were received at the place where the train stopped. In the Deiss case it was not necessary for

plaintiff to prove that the fatal shock was received at some certain and exact place westerly from the point where the train could have been stopped; it was only necessary for plaintiff to prove that said shock was received anywhere between the point where the train could have been stopped and the place where it did stop, and as will appear later herein, plaintiff's proof in that regard was not required to be beyond a reasonable doubt, beyond any doubt, to a certainty, or clear and satisfactory, but only a preponderance of the evidence.

In Cox v. St. Louis-San Francisco Ry. Co., supra, plaintiffs claimed that the train should have been stopped in from 60 feet to 80 feet, whereas defendant's testimony was to the effect that the train was stopped in approximately 90 feet, that it could not have been stopped with safety any quicker, and that those in charge of the train, the moment they saw the automobile, did all in their power to stop. Death was the result of physical injuries. In said case the court said: "But, if it be conceded that there was substantial evidence tending to show that this train, under the conditions, should have been stopped in from 60 feet to 80 feet from the point where the effort to stop was or should have commenced, then it would still have to appear that such stopping would have been in time to have saved the life of Cinda Cox, the deceased." This court does not disapprove of anything in the above statement as applied to the facts in the Cox case. Plaintiff in the case at bar had the burden of showing that the fatal shock was received somewhere between the place where the train could have been stopped and the place where it did stop. The instant case differs from the Cox case in that the verdict of the jury in this case was based upon facts and circumstances established by substantial evidence, and not upon mere speculation. The fact that in the Cox case more than a page of the opinion is devoted to a discussion of whether or not the train could have been stopped sooner than it was, shows, especially in a case where the evidence clearly

establishes negligence, that the fact of a violent dragging of an automobile, with a living person in it, many times as far as was reasonably necessary, would be an important circumstance which, along with other facts and circumstances such as those in the Deiss case, would enable a jury to reach a verdict on the basis of substantial evidence, not mere conjecture.

In Plinkiewisch v. Portland Ry. L. & P. Co., supra, plaintiff's intestate, a pedestrian, was struck and killed by one of defendant's street cars, which at the time was moving at a rate from two to four miles an hour, and which carried deceased a distance of some 40 to 60 feet after he was struck. It does not appear within what distance plaintiff claimed the street car should have been stopped. Death was the result of physical injuries. The statement of the court in said case to the effect that "The whole accident was one transaction, and, to attempt to cut it into fragments it would have been necessary to require the jury to depart from the realm of proof and enter the domain of speculation," may be applicable to the facts of that case, which appears to be another "splitting-of-seconds" case. But in our opinion it is not applicable to the facts in the case at bar, wherein the accident was a transaction which can and should be segregated in at least two particulars. First, the train could have been stopped within 350 feet of the Bridge street crossing, but as a matter of fact was not stopped until it reached its regular stopping place at the station in Winnemucca— the engine stopping at a point 1,287 feet from said Bridge street crossing. Second, the defendants would not have been negligent had they stopped the train within approximately 350 feet of the Bridge street crossing, but from said point where the train could have been stopped to the place where the train was actually stopped, the defendants were clearly negligent.

In Pacheco v. Southern Pacific Co., Cal. App., 19 P. (2d) 251, deceased, while operating a truck, was struck by one of defendant's trains at a street intersection and carried about 350 feet before the train

was brought to a stop. Death resulted from the collision. The speed at which the train was proceeding does not appear, nor does it appear whether the train crew did all they could to stop the train as soon as, with safety, they reasonably could. Plaintiffs on appeal did not rely upon the last clear chance doctrine. The statements made by the court in the last paragraph of its opinion in the Pacheco case must be interpreted in the light of the facts and circumstances in that case. It is true in the instant case that it was necessary for the plaintiff to prove, by a preponderance of evidence, that Deiss would not have died had the train been stopped within 350 feet; but whereas, in the Pacheco case, the court was of opinion that the jury would have had to resort to conjecture in considering the question whether deceased might not have been killed had the train been stopped sooner, in the case at bar there were facts and circumstances clearly established by both positive and expert testimony from which the jury, as reasonable men, could find that Deiss received the fatal shock more than 350 feet westerly from the Bridge street crossing.

We must remember, in the consideration of the cases most relied on by appellants, that "Every judgment must be read as applicable to the particular facts proved, or assumed to be proved, since the generality of the expressions which may be found there are not intended to be expositions of the whole law, but governed and qualified by the particular facts of the case in which such expressions are to be found. A case is only authority of what it actually decides." Lord Halsbury, in Quinn v. Leathern, 1 Br. Rul. Cas. 209, as quoted in Jensen v. Praders, 39 Nev. 466, 159 P. 54, and De Remer v. Anderson, 41 Nev. 287, 169 P. 737.

The collision, which did not take place as a result of defendants' negligence, was itself violent, and if the train had been stopped much sooner than it was this court might be disposed to reverse a judgment for plaintiff, even if the train had proceeded for some

distance beyond the point where it could, with reasonable care, have been stopped; but if we were to adopt some of the contentions made by appellants, we would be required to reverse this case even if the automobile had been dragged ten or twenty times as far as it was.

In the Deiss case the automobile, after being carried about fifty feet, began to drag on one of its rear axles, and this dragging continued for more than 1,200 feet. It was not slight, but violent. The furrow made by the end of the axle was about five inches wide and six inches deep, and where the engine stopped the end of the axle was resting in the end of the furrow. More than three-fourths of this dragging was the direct result of the negligence of defendants. In the Deiss case there is not, as there was in some of the cases relied on by defendants, any conjecture, surmise or guess as to the negligence of defendants in not stopping the train as quickly as it reasonably could have been stopped. Nor is there any conjecture, surmise or guess as regards defendants' failure to do all they could to save Deiss' life. We do not say that the trainmen intended to cause Mr. Deiss any injury. We believe that trainmen, as a class, are scrupulously careful of the lives and safety of others. But in the absence of any showing to the contrary, it is clear that the testimony adduced in behalf of plaintiff shows, by much more than a preponderance of the evidence, that defendants were negligent, and that there was substantial evidence from which a jury, as reasonable persons, could find that said negligence was the proximate cause of Deiss' death.

■ Reasonable men and women might, indeed, have differed as to whether the fatal shock was received easterly or westerly from the place where the train could have been stopped. Had the jury returned a verdict for the defendants, this court on appeal would undoubtedly have upheld that verdict, so far as the testimony is concerned, upon the ground that there is substantial evidence to support such a verdict. In refusing a new trial, the district judge said that had he been on the jury, he would have drawn the same

conclusion from the evidence that the jury did. If there be a doubt as to whether the jury's verdict is supported by the evidence, that alone does not justify this court in reversing the judgment. And this brings us to a discussion of certain law questions presented in the petition for rehearing.

Some of appellants' citations are to cases in which the evidence was wholly circumstantial. The instant case is not one of that kind. The witness Gayer saw the collision itself, and followed the train to the place where the engine stopped. Mr. Wrede, shortly after the collision, saw the automobile "bobbing along the track" on the pilot of the engine, "and in the engine was a man seated in the left side of the cab looking sort of towards the front of the train. * * * He was fairly well leaned out this way; looked as though he might be looking for something." Mr. Wrede testified further that he was "watching the train all the time, wondering what was going to happen next," and that he and Mr. Davis "got in the car and drove west along Haskell street, and we had reached a point very close to opposite the yardmaster's office when the train finally stopped. Mr. Davis also saw the automobile on the pilot of the engine shortly after the collision, and followed the train with Mr. Wrede, as above stated. Both Wrede and Davis saw the train start to slow up about 300 feet westerly from the Bridge street crossing, and saw the train brought to a slow, gradual stop.

■ If the evidence in this case had left the minds of the jurors in equipoise as regards any essential going to make up a case under the last clear chance doctrine, it would have been their duty to return a verdict for the defendants; and a fortiori it would have been their duty to return such a verdict had the evidence, in their minds, preponderated in favor of defendants on any one of such essentials. But we cannot agree with appellants when they contend that in this case it was the duty of the jury to return a verdict in their favor if plaintiff's proof, though consistent with defendants' liability, was also consistent with their nonliability. Our

view on this question is that if plaintiff's proof, in the minds of the jury, had been equally consistent with defendants' liability and their nonliability, then a verdict should have been returned for the defendants, for the reason that plaintiff would have failed to prove her case to the jury by a preponderance of the evidence. But in our opinion it is not sound law that in a case such as that at bar plaintiff must not only prove her case by a preponderance of evidence, but her proof must also exclude any other hypothesis or inference than that of defendants' liability.

In volume V of the second edition of Wigmore on Evidence, sec. 2498, the author, in discussing burden of proof and the measure of jury's persuasion, says: "In *civil cases* it should be enough to say that the extreme caution and the unusual positiveness of persuasion required in criminal cases do not obtain. But it is customary to go further, and here also to attempt to define in words the quality of persuasion necessary. It is said to be that state of mind in which there is felt to be a *'preponderance* of *evidence'* in favor of the defendant's proposition." Citing, amongst other cases, Devencenzi v. Cassinelli, 28 Nev. 222, 81 P. 41. In the case just cited this court said: "The term 'preponderance of evidence' is well defined in an instruction given to the jury in the case of Strand v. Chicago Ry. Co., reported on appeal in 67 Mich. 380, 34 N. W. 712, and therein pronounced a 'correct' definition of the term. The instruction as given is as follows: 'The burden of proof rests upon the plaintiff to make out the facts which I have stated to you are essential to establish his case by a fair preponderance of evidence. By this is meant such evidence as, when weighed with that which is offered to oppose it, has more convincing power in the minds of the jury. It is not a technical term at all, but means simply that evidence which outweighs that which is offered to oppose it. It does not necessarily mean that a greater number of witnesses shall be produced on the one side or the other, but that, upon the whole evidence, the jury believe the greater

probability of the truth to be upon the side of the party having the affirmative of the issue.' " The rule that plaintiff need only prove his or her case by a preponderance of the evidence is clearly implied by the following language in Gault v. Gross, 39 Nev. 274, 155 P. 1098: "To maintain an affirmative defense it must be established by a preponderance of the evidence." In 23 C. J., pp. 12–14, we read: "In ordinary civil actions a fact in issue is sufficiently proved by a preponderance of evidence, and the verdict or finding should be based upon the preponderance of the evidence, whether the evidence is direct or circumstantial. Under this rule, a party is not required to prove his case 'beyond a reasonable doubt,' 'beyond doubt,' 'beyond any doubt,' 'beyond dispute,' 'beyond question,' 'conclusively,' 'to a certainty,' or a 'moral,' 'reasonable,' or 'absolute' certainty, 'to the satisfaction of the jury,' or by evidence which is 'clear and conclusive,' 'clear and satisfactory,' 'clear and unequivocal,' 'positive and conclusive,' or such as to 'satisfy' the jury, or 'exclude the truth of any other theory.' " Devencenzi v. Cassinelli, supra, is one of the very numerous cases cited in the notes on page 13. And see Roediger v. U. P. R. Co., 95 Kans. 146, 147 P. 837. What constitutes preponderance of evidence is discussed commencing at page 16 of 23 C. J., and the Devencenzi case is again cited in note 91. In the same volume of Corpus Juris the author of the text, in considering the matter of sufficiency of evidence, and after stating the rule that verdicts cannot rest upon mere surmise, speculation, conjecture, or suspicion, says, at page 53, "Proof of a fact need not, however, be made by any particular kind or class of evidence, but the triers of fact may seek the truth within the field of the evidence to the utmost boundaries of reason which rational men of common sense might set without passing beyond the line between the field of probabilities 'and the field of conjecture." And in the case of Oldenberg v. State Industrial Comm., 159 Wis. 333, 150 N. W. 444, cited on page 53 of 23 C. J., the court held that, "To support an argument that an ultimate conclusion of fact has

no evidence to sustain it, there must be an absence of all evidence, or an absence of any relevant evidence."

The cases cited in appellants' petition to the effect that the jury is not permitted to base one inference upon another are not pertinent. The facts and circumstances upon which the jury based its inference that the fatal shock was received westerly from the place where the train could have been stopped were proved in this case as primary facts, and the verdict was not based upon any pyramiding of inferences.

The statement in our former opinion that Deiss was "all this time" trying desperately to save himself is justly criticized in the petition for rehearing. The evidence does not show exactly where or when Deiss reached out through the door of his car to gain a hold on the iron bar on the pilot of the engine. But whether deceased began trying desperately to save himself before or after the place where the train could have been stopped was not one of the main questions considered by the court. He may have commenced trying to save himself before or after, or at the time the engine reached said place; but it is certain, from clearly established facts, that he started trying to save himself either at the time of the collision or at some time between then and the time the train was stopped.

In the petition for rehearing counsel say: "We believe it to be a fair statement that the majority opinion sets out three items of evidence to justify the verdict: first, the fact that Deiss was 'still in the automobile but leaning through the window of his car and holding onto an iron bar on the pilot' so tightly 'that it was necessary to pry his fingers loose'; second, that Deiss had 'a look in his eyes described by one witness as "wild," and which another witness testified he would never forget'; third, that 'when the doctor arrived at the place where Deiss was removed from the automobile and engine pilot, he found "a very rapid, weak heart action, very slow respiration * * * no pulse." ' Upon this evidence the court states, 'We are not prepared to say * * * that the jury was not justified, as reasonable

men, in finding that the evidence preponderated in favor of the fatal shock having been received westerly, rather than easterly, from the place where the train could have been stopped.'" It is small wonder that counsel so earnestly question the correctness of our decision, in view of their belief that the aforesaid items of evidence were set forth in the former opinion to justify the jury's verdict. If our former opinion did not state with sufficient clearness the main facts and circumstances upon which we based our decision, it should now be clear that it was based mainly upon the distance the car, with deceased in it, was negligently dragged, as compared with the distance within which the train could have been stopped; the violence attendant upon said dragging, as shown by the width and depth of the furrow made by the rear axle of the automobile; the fact that Deiss was but slightly injured physically, was partly conscious when laid on the ground after the train stopped, lived until the next day, and strove with evident desperation to save himself after the collision. A considerable number of facts were set forth in our former opinion, in an attempt to make a fair statement. It is our understanding that a fair and correct statement of the facts should be made, regardless of which party they may tend to favor. There are other facts which might have been included in our former opinion, including the following: When the engine stopped, Deiss was not in the seat of his automobile, but was almost out of his car, "laying clear out up to here (designating) out of the window," "leaning out it appeared as far as he could reach, out of the side of the car"; when his fingers were pried loose from the iron bar on the pilot of the engine, he settled back into the driver's seat in his car; shortly after he was laid on the ground, six or eight feet from the cylinder of the engine, "somebody reversed the engine and the steam hissed out at him. He turned over. He was scared, kept throwing his head one way then the other. He was scared." Concerning this, another witness testified: "When they started to back this engine up, that

scared him. He kind of flinched to get away from it. I told him not to be afraid, he was all right. He just kind of looked wild at me." If these facts had also been stated in our former opinion, it would not mean that they were the chief facts upon which our conclusion was based.

■ Where there is a question as to the sufficiency of the evidence to support a verdict, this court must abide by the rule which has been followed in a long line of Nevada cases extending over a period of more than sixty years, namely, that a verdict of the trial court will not be disturbed if there is substantial evidence to support it. Leete v. Southern Pac. Co., 37 Nev. 49, 139 P. 29; Williams Estate Co. v. Nevada Wonder Mining Co., 45 Nev. 25, 196 P. 844; Weck v. Reno Traction Company, 38 Nev. 285, 149 P. 65; Solen v. V. & T. R. R. Co., 13 Nev. 106.

■■ To the foregoing general rule there is a well-recognized exception, to the effect that even where there is substantial evidence to sustain a judgment, it will nevertheless be reversed if, from all the evidence, it is clear that a wrong conclusion has been reached. Valverde v. Valverde, 55 Nev. 82, 26 P. (2d) 233. It is not clear to a majority of the members of this court that a wrong conclusion was reached in this case in the district court.

The case at bar was a close one for the jury in the lower court. If the jury had returned a verdict for the defendants, this court would undoubtedly have declined to disturb that verdict. If the facts in this case had been the same as in the Giannini case, we would reverse the judgment of the lower court.

In the petition for rehearing appellants take the position that the question as to whether the fatal shock was received easterly or westerly from the place where the train could have been stopped is one so entirely within the realm of the sciences that laymen cannot be expected to form an intelligent opinion thereon, and for that reason any finding by a jury upon such a question, without the benefit of expert testimony, must necessarily

be based upon mere conjecture. It appears that this contention is made for the first time on petition for rehearing. Aside from that, however, we are not of the opinion that the question above mentioned is so far removed from the realm of common experience as to prevent a jury's drawing a correct inference when facts and circumstances such as those in the Deiss case are fully placed before them. Shock resulting from accident, as well as from other causes, is of common occurrence. At times shock causes death, but very frequently it does not. While expert testimony in this case might have been of some assistance, depending upon such considerations as the knowledge and experience of the experts and their disinterestedness or bias, we cannot agree that under such evidence as presented, expert testimony was necessary on the issue as to whether the fatal shock was received before or after the train reached a point approximately 350 feet from the crossing. The testimony of qualified experts, particularly if disinterested, would very likely have assisted the jury, but even without such testimony there was substantial evidence to support the verdict.

And see 22 C. J., p. 639, sec. 733.

The petition for rehearing is denied.

COLEMAN, J.: I dissent.